[No. 20417. Department Two. February 25, 1927.]

Guy E. Kelly et al., Respondents, v. G. W. H. Davis et al., Appellants, F. P. Haskell, Jr., Defendant.[1]

Appeal from a judgment of the superior court for Pierce county, Wright, J., entered October 11, 1926, upon findings in favor of the plaintiffs, in an action for attorneys' fees, tried to the court. Affirmed.

*The Attorney General* and *B. B. Adams, Assistant (Grant Dentler,* of counsel), for appellants.

*M. A. Langhorne,* for respondents.

Tolman, J.—This is an action by respondents, as plaintiffs, to recover compensation for services rendered as attorneys to and for the liquidator of the Scandinavian-American Bank of Tacoma. In the main, the facts are the same as in the case of *Oakley v. Davis, ante,* p. 432, 253 Pac. 648. The defense interposed here is identical with the defense in the *Oakley* case.

As in the *Oakley* case, none of the evidence is brought up and we have been given no opportunity to say that the trial court erred in his findings, but only that he erred in the conclusions drawn from those findings.

These respondents were employed in conjunction with Mr. Oakley, apparently at or about the same time and under the same conditions, except that it was here found that the liquidator Haskell expressly agreed that the compensation of these respondents should be fixed at such sum as the court should deem reasonable and that respondent Kelly should be paid a retainer of $750 per month throughout the term of his employment, and when the liquidation was completed the respondents would be paid such additional sum as would be fair and reasonable for the work done and the results obtained. It was further found:

[1]Reported in 253 Pac. 653.

"That the sum of $750 per month was not intended to be in full consideration of legal services performed by the plaintiffs, but was paid and accepted as a retainer; that as such retainer, there was paid to the plaintiffs during their employment, the sum of approximately $39,000; that of said sum, the plaintiffs were compelled to and did expend the sum of approximately $27,500 or $6,100 per year upon their increased general office expenses necessitated by the volume of business of such liquidation; that the plaintiffs received from persons other than the defendants, or their predecessors in office, approximately $9,500 which sum, however, was not an asset of the said bank and did not belong to the funds in liquidation but was paid to the plaintiffs as attorneys' fees by debtors of the said bank in excess of the full amount of the principal of their debts, with the full amount of the interest thereon; that the plaintiffs also made several trips to eastern states and many trips about the state of Washington, the expense of which they did not charge to the liquidators but bore themselves, the amount so expended, however, is not disclosed by the evidence.

"That a reasonable fee to be paid the plaintiffs by the defendants for the services so performed by the plaintiffs in connection with the litigation and their professional work as attorneys for the liquidators of the said bank, is the sum of $70,000 over and above the expense incurred by them as above set forth, and the court finds that, in addition to the amount received by them, they are entitled to the further sum of $49,000; that the evidence of the expert witnesses called on behalf of the plaintiffs, as well as the defendants, is in agreement that the fair and reasonable value of the legal services performed by the plaintiffs in and about the liquidation of the said bank, is a sum in excess of $35,000 each (only one expert witness having been called on behalf of the defendants whose testimony was not based upon the evidence in that he did not base the same upon the fact that the plaintiffs devoted virtually all of their time during this period to the affairs of the said bank, but who stated that, in his opinion, the plaintiffs were entitled to recover the sum of $24,000 in addition to the amount they had already received)."

It was also found that without knowledge, information or inquiry into the amount, nature or reasonable value of the services rendered by respondents, on May 25, 1925, the supervisor of banking discharged respondents and fixed their fees at the amount they had already received, although he then had no knowledge of what that amount was. After the testimony was heard and before findings were made, the court, as in the *Oakley* case, made an interlocutory order directing the supervisor to fix and allow reasonable fees, and in response to that order he again fixed respondents' fees at the amount they had already received. Again, as in the *Oakley* case, the court found that action to be arbitrary and capricious, and proceeded, by

findings hereinbefore quoted, to determine the full amount thereto-fore received by respondents, and the amount paid out by them in expenses occasioned by this particular employment, and made a further allowance, so that each of respondents should receive $35,000, exclusive of expenses, as compensation for the services rendered. The monthly retainer was payable to Kelly, but the trial court seems to have assumed that MacMahon shared equally therein. At any rate, the results, so far as the appellants are concerned, are the same, and neither Mr. MacMahon nor Mr. Kelly is complaining as against his allowance or that of the other. While apparently not partners, their relations are such as to lead to the supposition that these matters have been satisfactorily adjusted between them.

These differences in the facts do not in any wise affect the results. Plainly, as in the *Oakley* case, the department acted arbitrarily throughout. No reason appears in the record, and none is suggested, why each of these respondents did not render as great and as valuable services as did Mr. Oakley, and the trial court who heard the evidence in both cases evidently felt that each one of the three attorneys bore his full share of the burden and that all three were necessary to the proper performance of the services required by the liquidator.

The facts justify the application of the rules of law which were applied in the *Oakley* case, and the judgment is therefore affirmed.

MACKINTOSH, C. J., BRIDGES, PARKER, and ASKREN, JJ., concur.