## Commonwealth ex rel. *v.* United States Fidelity & Guaranty Company, Appellant.

Argued January 2, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Francis B. Bracken,* with him *Geo. Ross Hull,* for appellant.

*Harold D. Saylor,* Deputy Attorney General, with him *Wm. A. Schnader,* attorney general, for appellee.

OPINION BY MR. JUSTICE LINN, January 30, 1934:

This appeal is from the refusal to open a judgment confessed pursuant to authority contained in defendant's bond.

On April 15, 1929, appellant delivered its bond to the Commonwealth to enable the Tulpehocken National Bank & Trust Company to comply with the provision of the Administrative Code,[1] requiring state depositories "to furnish a bond to secure payment of deposits and interest to the Commonwealth." The bond provided that the bank "shall from time to time, on demand of the state treasurer, or other officers hereinbefore mentioned by whom such deposits were made, pay over to him or them any part of the sums of money belonging to the Commonwealth."

On August 22, 1933, the state treasurer made a draft on the bank for the amount of the deposit. The draft was not paid, because the bank was in the hands of a conservator. (The Bank Conservation Act, March 9, 1933, chapter 1, section 201, 48 Stat. 2, 12 USCA 1933, Supp., section 201.) Accordingly, on September 16, 1933, judgment was confessed in favor of the Commonwealth, and against appellant, for $36,828.57, the amount of the State's deposit with interest and stipulated collection fee. The confession was accompanied by an averment of default alleging that, on August 22, 1933, appellant had "failed and refused upon demand made by the state treasurer to pay to the Commonwealth of Pennsylvania or to the state treasurer thereof the sum of $35,000 . . . . . ."

---

[1] Approved June 7, 1923, P. L. 498, section 1102, as amended April 13, 1927, P. L. 207, section 45, amending section 1102, in force when the bond was given and recited in the averment of default.

On October 9, 1933, on appellant's petition, a rule was granted to show cause why the judgment should not be opened and defendant allowed to defend. In support of the application, it was alleged that there had been no default, and that, on the contrary, payment of the deposit by the bank was prevented by presidential proclamation and act of congress. A responsive answer was filed by the Commonwealth. By stipulation,[2] it was agreed that the bank, "whether solvent or insolvent, could not lawfully make payment to any of its depositors." On the record so made, the case was heard and the rule was discharged.

The argument of the appellant is that performance by the bank was rendered impossible by supervening law, and that the consequent suspension of the obligation of the bank absolved the appellant surety for the time being. The question is whether the default, which admittedly has occurred, is a default within the meaning of the contract.

In Bailly v. DeCrespigny, L. R. 4 Q. B. 180, a case frequently cited, it is said at page 185: "where the event is of such a character that it cannot reasonably be supposed to have been in contemplation of the contracting parties when the contract was made, they will not be held bound by general words which, though large enough to include, were not used with reference to the possibility of the par-

---

[2] "IT IS HEREBY STIPULATED AND AGREED by and between counsel for plaintiff and counsel for defendant, that the Tulpehocken National Bank and Trust Company of Philadelphia, whatever may have been its financial condition, whether solvent or insolvent, could not lawfully make payment to any of its depositors, including the Commonwealth of Pennsylvania, of the amount of their deposits at any time since March 6, 1933, by reason of the facts averred in the petition of defendant in relation to the proclamations and executive order of the president of the United States and the appointment of a conservator for the said bank under the Act of Congress of March 9, 1933; said bank being precluded from making any payments to depositors without permission of the comptroller of the currency."

ticular contingency which afterward happens."[3]    We then inquire whether the partial closing of the bank— the restricted operation by the conservator—can be reasonably supposed to have been in the contemplation of the parties, as an event provided for, when the contract was made. It cannot be denied that, if the bank had been closed for insolvency, defendant would be liable. In considering the application of the rule, the contract must be examined in the light of the circumstances in which it was made, the most important being the statutory regulation of the deposit of public funds. Such contracts are held to have been executed with the intention, common to both parties, of providing the State with the immediate use of its funds, when required, and, therefore, the words must be understood to give effect to that intention, if they will support it. Appellant agrees that, when the Commonwealth demanded the money, the bank could not lawfully pay it. It would, therefore, be immaterial that payment by the bank was temporarily prohibited by federal power, unless the possible exercise of that power was excepted in the contract as an excuse for nonpayment by the appellant. As there is no expressed exception, defendant must show that there was an implied condition operating to release both the bank and the appellant from performing during any period that the bank's assets might lawfully be in the custody of the law.

What, then, is the contract? Executed pursuant to the statute, it provided that the bank "shall from time to time, upon demand of the state treasurer or other officers hereinbefore mentioned by whom such deposits were made, pay over to him or them any part of the sums of money belonging to the Commonwealth......deposited with it...... And in case of a breach of any of the conditions of the foregoing bond of the principal, the surety

---

[3] See also Restatement, Contracts, sections 457, 458; Dyer v. Wightman, 66 Pa. 425, 428; The Kronprinzessin Cecilie, 244 U. S. 12, 22; Monaca Boro. v. Monaca St. Ry. Co., 247 Pa. 242, 93 A. 344; Williston, Contracts, section 1933 et seq.

above-named holds itself bound as principal for any debt arising thereunder, in the amount aforesaid, and agrees to answer for the same without regard to and independently of any action taken against the Tulpehocken National Bank and Trust Company of Philadelphia, and whether the Tulpehocken National Bank and Trust Company is first pursued or not." Read in the light of the statutory regulation and of the object to be attained, the words used were obviously intended to insure payment, and, therefore, solvency of the bank—or, in other words, that the bank would always be in condition to pay. Though termed surety, defendant is an insurer: South Phila. State Bank v. Nat. Surety Co., 288 Pa. 300, 305, 135 A. 748, and cases cited; also see the General Insurance Act of 1921 (P. L. 682, sections 661 to 665). The purpose was to provide insurance of state deposits. The requirement of a contract in the words quoted expressly excludes the basis of appellant's implication that suit cannot be brought against it during such period in which suit may not be brought against the bank. Liability was not intended to depend on the Commonwealth's right to sue the bank; it was intended, inter alia, to cover a receivership: South Phila. State Bank's Insolvency; Nat. Surety Co. v. Franklin Trust Co. Any other construction would attribute to the parties an intention to express their agreement in words that would satisfy the statute, when, in fact, they intended to disregard it, an interpretation that cannot be tolerated: Cf. Com. v. Eureka Cas. Co. et al., 314 Pa. 34.

There is no support for the argument that the State could not lawfully demand its deposit in August, 1933. A demand is not forbidden by the act of congress, though rendered unavailing. The act provides (section 203): "During the time that such conservator remains in possession of such bank, the rights of all parties with respect thereto shall, subject to the other provisions of this subchapter, be the same as if a receiver had been appointed therefor." There was default from the moment

the bank was placed in the hands of the conservator, just as there would have been default if a receiver had been appointed, for, from that moment, the bank was no longer able to meet its obligations. That condition matured defendant's obligation to the State. See Restatement, Contracts, section 324; Central Trust Co. v. Chicago Auditorium Assn., 240 U. S. 581, 591.

Appellant's position would imply an agreement that the federal government would not enact legislation for the conservation of weak banks, or, at least, would not apply such legislation to the Tulpehocken National, if it became too weak to continue as theretofore; that the contingency which arose must now be considered as one about which no contract was made, or intended to be made; and that, so long as the bank remains under federal supervision, appellant is under no obligation to pay. Such an implication, contradicting what is expressly stated, must be rejected.

The assets of the bank are in gremio legis, a possibility that must have been contemplated, else why insure? The national bank holiday suspended all banking; when the holiday ended, most banks were permitted to do business without restriction. But the Tulpehocken National Bank was considered unfit to receive a license to reopen, and was placed in the hands of a conservator with leave to operate conditionally. If immune from claims during the bank holiday, it is now, and, when judgment was entered, was in process of administration quite similar to receivership. In addition to receiverships, for which ample provision already existed, congress, by the new legislation, provided for the regulation of banks too weak to continue as solvent institutions but not so impaired as to require winding up by receivers. Comparison of the Bank Conservation Act with the statutes governing receiverships (12 USCA, sections 191 to 200) shows that they are of the same species, differing principally in the object of the proceedings—the conservatorship looking to the possible rehabilitation; the receiver-

ship, to dissolution. A conservator (section 203), like a receiver, takes control of the "books, records and assets of every description," and has "all rights, powers and privileges now possessed by, or hereafter given, receivers of insolvent national banks and is subject to the obligations and penalties, not inconsistent with the provisions of this title, to which receivers are now or may hereafter become subject." It is specifically provided, as has been noted, that "During the time that such conservator remains in possession of such bank, the rights of all parties with respect thereto shall, subject to the other provisions of this subchapter, be the same as if a receiver had been appointed therefor."

It has never been doubted that possession by a receiver is cause for enforcing liability on bonds given to secure state deposits: South Phila. State Bank's Insolvency, 295 Pa. 433, 145 A. 520; Nat. Surety Co., Glens Falls Indemnity Co. et al. v. Franklin Trust Co., in the hands of Gordon, Secretary of Banking et al., 313 Pa. 501. They are intended to provide for that contingency.

The considerations requiring the conclusion that the bank's default was a contemplated risk necessarily led to the result that there was no "impossibility of performance" by the bank in the sense contended by appellant; it was mere "subjective impossibility." See Williston, volume 3, section 1932; Restatement, Contracts, section 455. During the bank holiday, performance was impossible in the true legal sense. If, however, a receiver had taken possession, while payment would have been unlawful, and, in that case, impossible, the default would have been the result of the conduct of those in charge of the bank—a breach of contract, not an excuse for failure to perform: Central Trust Co. v. Chicago Auditorium Assn., supra;[4] Potts v. Rose Valley Mills, 167 Pa. 310,

---

[4] At page 591, it is said: "In short, it must be deemed an implied term of every contract that the promisor will not permit himself, through insolvency or acts of bankruptcy, to be disabled from mak-

31 A. 655; Drug Co. v. Board of Administration, 106 Kansas 256; Rosenbaum v. U. S. Credit-System Co., 61 N. J. L. 543. Inability to pay, resulting from such cause, would not excuse the insurer. The fact is that the bank could not qualify for a license generally to reopen after the bank holiday; accordingly, the comptroller of the currency, supervising all national banks, seized its assets and turned them over to a conservator. During the conservatorship, payment is forbidden, except on conditions not here present, just as it would be forbidden, if the comptroller had concluded that a receivership was necessary. Payment was not illegal at all events, but only in consequence of the condition of the affairs of the bank, resulting from its own management, a matter which must have been in the contemplation of the parties as an event insured against. Defendant gave its bond to protect the Commonwealth against nonpayment resulting from the condition of the bank; it is immaterial that an intermediate condition, short of a declaration of insolvency, has led to the seizure of its assets; the bond covers the less as well as the greater. If defendant pays and, in the future, the bank turns out to be solvent, defendant's right to subrogation will furnish reimbursement.

Appellant has referred to City of East Cleveland v. Fidelity & Deposit Co. of Maryland (U.S.D.C. N.D. Ohio), 5 F. Supp. 212. For the reasons stated above, we cannot follow this decision, although it is to be observed that the learned judge who wrote the opinion of the court, stated that there was nothing in the act of congress, or the orders made pursuant to it, prohibiting demand by the depositor for payment of his deposit.

The judgment is affirmed.

---

ing performance; and, in this view, bankruptcy proceedings are but the natural and legal consequence of something done or omitted to be done by the bankrupt, in violation of his engagement."