## Giffen *v.* First National Bank & Trust Company of Greensburg et al., Appellants.

Argued May 4, 1936.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*James J. Burns, Jr.,* of *Willmann, Burns & Sack,* for
appellants.

*Paul K. McCormick,* for appellee.

OPINION BY PARKER, J., September 30, 1936:

The question involved in this workmen's compensa-
tion case is whether there was sufficient evidence to sus-
tain a finding of fact by the referee and board that the
claimant was employed by First National Bank
and Trust Company of Greensburg when he met with
an accident and was injured. This makes necessary
reference to the pleadings and the facts which were
shown by the claimant and not contradicted by the
defendants.

The claimant on September 12, 1933, while en route
from Greensburg to Pittsburgh, was injured as a re-
sult of a collision between an automobile in which he
was riding and a truck. The injuries suffered, includ-
ing fractures of the right forearm and right foot, re-

quired hospitalization. Due to a concussion of the brain he was unconscious for two weeks, and continued for some time unable to perform any labor. While he recovered from the injuries to foot and arm, his mental condition, as a result of the accident, was such that he did not testify at the hearing before the referee.

Three separate petitions were presented by the claimant against First National Bank and Trust Company of Greensburg, C. R. Nesbit, conservator of that bank, and Greensburg Brewing Company, and all three cases came on for hearing at the same time and were heard together. The referee and board found as a fact that claimant was an employee of the bank and made an award accordingly, but dismissed the petitions against the conservator and the Greensburg Brewing Company. The evidence is so clear that claimant was not an employee of the Brewing Company that we will not make any further reference thereto.

There was evidence that at the time of the accident claimant was on his way to Pittsburgh with checks on his person drawn payable to the creditors of La Premiata Macaroni Company (hereinafter referred to as Macaroni Company), of which company Maddas Bank and Trust Company (hereinafter described as Maddas Bank) had been appointed receiver and that the trip was made by claimant for the purpose of presenting the checks for approval to an attorney for the receiver. On September 24, 1931, the Maddas Bank, the receiver of the Macaroni Company, was merged with the Union Trust Company. On December 31, 1931 the Union Trust Company, Merchants Trust Company and The First National Bank and Trust Company of Greensburg were merged under name of First National Bank and Trust Company of Greensburg. The claimant who had been employed by Maddas Bank remained with the Union Trust Company for six months after the merger of these institutions and shortly after the

merger with The First National Bank and Trust Company, the claimant entered the employ of the merged banks in the trust department and so continued until the banking holiday on March 5, 1933. On March 22, 1933 C. R. Nesbit was appointed conservator of First National Bank and Trust Company by the Comptroller of the Currency, by authority of an Act of Congress of March 9, 1933 (12 USCA 201 et seq.), known as "Bank Conservation Act" and by direction of that appointee claimant continued to perform the same service as theretofore and was paid out of the funds of the bank. On March 9, 1934, the conservator by direction of the Comptroller was removed and the management of the bank was returned to the directors when its assets were immediately transferred to three trustees for the purpose of liquidation. The Globe Indemnity Company was insurance carrier for both First National Bank and Trust Company and the conservator, and was a party defendant in the two cases. Referee and board having found as a fact that claimant was employed by First National Bank and Trust Company at the time of the accident, an appeal was taken to the court of common pleas where judgment was entered for the claimant.

Briefly, the position of the appellants is that the conservator was the employer of the claimant, that the conservator was a federal employee, and that if claimant is entitled to compensation at all, he is entitled to be compensated under the Act of Congress of September 7, 1916 (5 USCA 751). We are of the opinion that the case was correctly decided by the compensation authorities and common pleas court.

It is clear at the outset that the claimant, while engaged in taking the checks to Pittsburgh for approval, was acting as an employee of either the bank or the conservator. There was affirmative evidence that Giffen was acting for the fiduciary which was in charge of the liquidation of the Macaroni Company and that this

liquidation was being carried on by the staff of the bank or its conservator and not by employees of the Macaroni Company. Claimant received his compensation from the bank and was under the direction and control of either the bank or the bank acting by its conservator. He did not receive orders or compensation from the Macaroni Company. As we understand the argument of the appellant this conclusion is not questioned. It therefore becomes necessary to determine whether the employer was the conservator or the bank.

The "Bank Conservation Act," emergency legislation passed within a few days after the bank holiday, granted to the Comptroller of the Currency the power, when he deemed it necessary, to appoint a conservator for any national banking association. The conservator under the direction of the Comptroller was given authority to "take possession of the books, records, and assets of every description of such bank, and take such action as may be necessary to conserve the assets of such bank pending further disposition of its business as provided by law. Such conservator shall have all the rights, powers, and privileges now possessed by or hereafter given receivers of insolvent national banks." It was further provided therein that all expenses of any such conservator should be paid out of the assets of such bank and should be a lien thereon prior to any other lien. The act required the Comptroller to make an examination of the affairs of the bank and provided that whenever the Comptroller became satisfied that the bank could safely resume business, it should be permitted to do so, and that the bank might be returned to the control of its directors on the accomplishment of any plan of reorganization which met with the approval of the Comptroller. Although the conservator was granted the powers of a receiver, it was the evident purpose of this legislation, as the very title indicates, to hold the assets of a bank in the condition they were

at the time and maintain that status until it could be determined whether the bank could safely continue to transact business, should be reorganized or be liqui-dated. In other words, the conservator acting under the advice of the Comptroller was substituted for the board of directors as the manager of the business subject to limitations set forth in the act.

During the period that the conservator was in charge of this bank he did not, as corporate fiduciaries frequently do, bring into the bank a staff of employees of his own which he maintained for the purpose of acting as trustee and he did not compensate the employees from his own funds and rely on fees to reimburse him. What the conservator actually did in accordance with the terms of the act was to assume the prerogatives of the board of directors and for the time being direct the affairs of the bank subject to limitations prescribed in the Bank Conservation Act. As a consequence, his acts were the acts of the bank and his orders were the orders of the bank. This is the more apparent when we note the precise duties which the claimant ordinarily performed and what he was doing when injured. He was engaged in the trust department and not in the commercial department. At the time of the accident, by virtue of the appointment by a court of First National Bank and Trust Company as receiver for the Macaroni Company, claimant was engaged in the liquidation and distribution of the assets of the Macaroni Company, since First National Bank by the merger was the suc-cessor to the Maddas Bank as receiver. The assets of the Macaroni Company were not the assets of the bank, but of a trust estate being administered by it. In fact neither the conservator nor the Comptroller could exercise any authority over the assets of the Macaroni Company unless to hold them and render an account of any service that had been performed just as is the practice in the case of the administrator of a deceased adminis-

trator. The conservator could not act as fiduciary; he could only limit the actions of the bank which was the receiver of the Macaroni Company for the receiver was bound by the orders of the court appointing it. Such action as was taken by the bank was by virtue of its appointment by a court to which it was answerable. It is a matter of common knowledge that national banks authorized to act as trust companies for whom conservators have been appointed have with the consent of the conservator continued to perform the duties of their trust and in so acting they do not interfere with the resources or assets of the bank but deal with those of the trust estate. This is precisely the situation here disclosed by the evidence. The bank as receiver acting through its agent, the claimant, was preparing checks for the purpose of distributing the assets of the Macaroni Company. True, the conservator exercised a certain amount of control for the purpose of preserving the resources of the bank and protecting creditors until the emergency passed and the bank was either returned to its officers, reorganized or liquidated, but when any act was performed in its trust relation as receiver, it was the act of the fiduciary as such.

The appellants argue that the "corporate entity known as the First National Bank and Trust Company was no longer acting as a banking institution at the time this accident took place." It is at this point that appellants fall into error. The First National Bank and Trust Company did not cease to exist as an entity. It continued to perform banking functions and its duties as a fiduciary in so far as it was permitted to do so by the conservator.

When we take into account the facts that Giffen was paid from the funds of the bank, that he was acting under authority of the appointment of the bank as receiver and that the bank was functioning subject to limitations, that the Globe Indemnity Company was in-

surance carrier for both the bank and the conservator and that the conservator was party to an action tried at the same time, we are impelled to the conclusion that there was sufficient evidence to support the findings of the referee and board.

Undoubtedly a receiver may be an employer within the meaning of that term as used in our compensation act (71 C. J. 411), but whether he is in a particular case is to be determined from an examination of the existing facts and circumstances. This is well illustrated in this case. As between the Macaroni Company and the receiver of that company, the receiver was the employer of Giffen, and as between the bank and the conservator, the bank was the employer.

The conclusion at which we have arrived makes it unnecessary to consider the suggestion of appellants that the claimant was a federal employee within the terms of the Act of Congress of September 7, 1916, providing compensation for federal employees. However, it seems clear to us that even if Giffen was an employee of the conservator, he was not a federal employee. To hold otherwise would make employees of receivers for corporations appointed by the federal courts employees of the United States. The proceedings by which a conservator was appointed was a mere regulation of the affairs of a national banking association. After a careful reading of the Federal Employees' Compensation Act we find nothing in it to warrant a conclusion that the employee of a conservator of a national bank is an employee of the United States, as that term is used in the act.

Judgment affirmed.