March 3, 1939. The opinion of the Court was delivered by
In November, 1934, the Mechanics Building Loan Association of Spartanburg, S.C. discontinued receipt of monthly payments on investment stock. The following February, at a stockholder's meeting held after due notice, a plan of voluntary liquidation by an executive or liquidating committee of its stockholders was adopted. Partial liquidation was carried out by this committee. On November 16, 1932, before voluntary liquidation was undertaken, the board of directors of the association, under authority of the by-laws, declared Series No. 36 matured and ordered stockholders of that series paid. As of April 23, 1938, no dividends had been paid to the stockholders of any series other than Series No. 36, and the latter had been paid approximately 93% of the par value of $100.00 per share, totaling approximately One Hundred Eighty Thousand ($180,000.00) Dollars, leaving a balance due thereon of principal and *Page 264 
interest of approximately Twenty-six Thousand ($26,000.00) Dollars. During this period the Board of Bank Control made periodical audits and suggestions and recommendations to the committee regarding liquidation.
On April 23, 1938, Mrs. Bertha R. Claffy, a stockholder in Series 37, suing for herself and all other stockholders who might join in the action, brought suit against the association alleging mismanagement and that a preference had been committed by those in charge, alleging insolvency, and asking for the appointment of a Receiver. Mrs. Claffy owned stock with a face value of $5,000.00. A rule to show cause was issued against the association on April 23, 1938, returnable before Hon. T.S. Sease, Circuit Judge.
The respondent association filed a demurrer to the petition on the ground that it did not state facts sufficient to constitute a cause of action. The first hearing was held on May 7, 1938, at which time the plaintiffs were allowed to amend their petition and ask for judgment, and the demurrer was overruled. At the hearing, attorneys for Mrs. Claffy presented petitions of three other stockholders owning additional stock in the amount of $8,500.00, asking that they be allowed to join in the action. These parties were allowed to come in. Mr. E.A. Wayne, chief examiner for the Board of Bank Control, appeared at the direction of the board on request of the association, and testified. His testimony was that the Board of Bank Control had exercised control over the association and made audits annually, and concluded, and was still of the opinion that no insolvency existed, and if there had been any danger of it, the board would have acted.
After this first hearing, Judge Sease announced orally that he was going to deny the receivership, and instructed attorneys for the association to prepare an order to that effect. On the same day (May 7, 1938), the attorneys for the association wrote and delivered to Mr. Wayne a letter requesting the Board of Bank Control to immediately appoint a conservator. It is correctly set out in the board's intervening *Page 265 
petition and in Judge Grimball's order of October 24, 1938. On May 9, 1938, attorneys for the association notified the Board of Bank Control by telephone that no order had been signed. On May 10, 1938, before any order was signed, attorneys in the action were notified by Judge Sease that a second hearing would be held on May 14, 1938. Between the first and second hearings, on May 9, 1938, the Board of Bank Control appointed a conservator for the association. A second hearing was held before Judge Sease on May 14, 1938, at which time he announced that he would file an opinion within sixty days. On June 4, 1938, Judge Sease signed his order appointing J.C. Grier and A.C. Willard Receivers of the association. Such order definitely decided that Mechanics Building Loan Association was not insolvent, but had on hand sufficient assets "which, if managed with the same degree of care and good business judgment as has been shown in the past, will pay off all the remaining stockholders of said respondent (the association) in full and no doubt will have additional funds with which to pay a bonus to its stockholders." It is pointed out in the order that Receivers were being appointed not on the ground of insolvency, but for the purpose of conserving the assets of the association, and preventing waste, and for other reasons therein mentioned. There has never been an appeal from this order. The Receivers subsequently qualified and filed bond, and an order was signed by Judge Sease on June 7, 1938, appointing Perrin Tinsley attorneys for the Receivers. The conservator, however, had taken possession of the assets of the association upon his appointment and has not turned them over to the Receivers appointed by Judge Sease, although demand was made upon his agent, W.N. Query.
Thereafter, on June 10, 1938, the State Board of Bank Control filed in the Supreme Court of South Carolina its petition against Honorable T.S. Sease, as Judge of the Seventh Judicial Circuit, seeking an adjudication that it had *Page 266 
complete and exclusive jurisdiction to liquidate the financial institutions of the State enumerated in the Act of its creation. The board also asked for a writ of prohibition to prevent Circuit Judges from appointing Receivers for such institutions. A rule to show cause was issued by Chief Justice Stabler directed to Judge Sease. Thereafter, Judge Sease made return and the matter was argued in the Supreme Court. On September 6, 1938, the Supreme Court filed its opinion dismissing the petition and the rule to show cause on procedural grounds. State Board of Control v. Sease,188 S.C. 133, 198 S.E., 602.
On September 7, 1938, attorneys for the Board of Bank Control presented to Hon. A.L. Gaston, Judge of the Sixth Judicial Circuit, a petition asking that their conservator be allowed to intervene in the Claffy action, and for an adjudication that Judge Sease was without authority to appoint Receivers. On the same day, an order was signed by Judge Gaston ordering that the existing possession and custody of the assets of the Mechanics Building Loan Association in E.A. Wayne as conservator be continued and that all interference therewith be restrained. This order also required the parties to the Claffy action to show cause before the Judge presiding in the Seventh Circuit why the relief sought in the petition should not be granted. A demurrer to the order of Judge Gaston was interposed by attorneys for Mrs. Claffy et al., and a return filed reserving rights under the demurrer. Attorneys for the association and its receivers also filed a return contesting the right of the Board of Bank Control to intervene or take charge of the liquidation of the association. The case was twice argued on Circuit, on October 7, 1938, and on October 14, 1938. On October 24, 1938, Judge Grimball filed his order directing that jurisdiction over the liquidation of the Mechanics Building Loan Association be relinquished to the State Board of Bank Control.
In due time notice of intention to appeal from the order of Judge Grimball, and the judgment entered or to be entered, *Page 267 
was served on behalf of both plaintiffs and defendants, and appellants now bring the appeal to this Court.
In the foregoing statement we have drawn heavily upon the "Statement" contained in the Transcript of Record.
There are numerous exceptions attempting to raise the issue of jurisdiction of Judges Gaston and Grimball; and also the issue of the constitutionality of the Act (No. 802, Acts of the General Assembly, 1936, page 1484), creating the State Board of Bank Control, but we see no reason for going into these issues when the whole controversy as between the State Board of Bank Control on the one side, and Mrs. Bertha R. Claffy et al., in their own right, etc., and Mechanics Building Loan Association, and the Receivers appointed by Judge Sease, on the other side, can be disposed of on the uncontroverted facts.
Here we have a building and loan association, which according to all the testimony is solvent, and the only parties who are interested in its assets are the stockholders. Indeed it has been juridically determined that Mechanics Building Loan Association is solvent (order of Judge Sease of June 4, 1938). There are no depositors or creditors in the sense that the words "depositors and creditors" are used in the "State Board of Bank Control Act."
As aforesaid, the State Board of Bank Control was created by Act 802 of the Acts of the General Assembly, 1936, and the duties and powers of the Board were therein outlined and defined. It is a special administrative body of limited jurisdiction; and whether this board has exclusive jurisdiction or jurisdiction coordinate and concurrent with the Courts, of insolvent banks and building and loan associations, and banks and building and loan associations "in imminent danger of insolvency, and it is necessary in order to protect the interests of depositors and creditors to liquidate such bank," is not of any moment under the facts of this case. *Page 268 
The Act gives the board general supervisory powers of banks and building and loan associations at all times. It is provided in Sections 8 and 9 of the Act that the provisions of Section 8, and Subdivision (a) of Section 9, shall applymutatis mutandis to building and loan associations.
Section 8, Subdivision (a) provides: "Whenever it shall deem it necessary in order to conserve the assets of any bank for the benefit of the depositors and other creditors thereof, the board may appoint a conservator for any bank and require of him such bond and security as the board deems proper. The conservator, who shall serve at the pleasure of and under the direction of the board, shall take possession of the books, records, and assets of every description of such bank, and take such action as may be necessary to conserve the assets thereof, pending further disposition of its business as provided by law. Such conservator shall have all rights, powers, and privileges now possessed by or hereafter given Receivers of insolvent banks and shall be subject to the obligations and penalties not inconsistent with the provisions of this Act, to which Receivers are now or may hereafter become subject. During the time that such conservator remains in possession of such bank, the rights of all parties with respect thereto, shall, subject to the other provisions of this subsection, be the same as if a receiver had been appointed therefor. * * * "
Section 9, Subdivision (a), provides: "When the Board shall conclude that any bank for which a conservator has been or hereafter shall be appointed, is insolvent, or in imminent danger of insolvency, and it is necessary in order to protect the interests of depositors and creditors to liquidate such bank, it shall order the liquidation thereof; and when liquidation shall have been so ordered the same shall be under and by the conservator appointed for such bank and shall continue until the liquidation of such bank has been completed. Any such conservator shall be vested with the same powers and duties as receivers of banks under existing laws, *Page 269 
except as in its discretion the Board shall fix or limit the liquidation expenses of such bank. The liquidation of all such banks shall be under such rules and regulations as may be prescribed by the Board, and the conservator shall have the right to apply to a court of competent jurisdiction for direction and instruction on questions of law arising in the liquidation of any such bank. * * *"
The board, under the statute, would have authority to appoint a conservator and take charge of the assets of an institution whenever it shall deem it necessary in order to conserve the assets of such institution for the benefit of the depositors and other creditors thereof; and to liquidate such institution for which a conservator has been appointed if it (the board) should conclude that such institution is insolvent or in imminent danger of insolvency, and it is necessary in order to protect the interest of depositors and creditors.
In this case there are no depositors or creditors, within the intent of the Act, of the institution. As stated in the argument of one of the counsel for appellants, stockholders are not creditors of a corporation, as that term is generally used, but are simply the owners of shares or proprietary interests therein. And the Act (802) recognized this since in providing for a possible reorganization of an institution of which the board has taken control, in Subsection (e) of Section 8, in addition to reference to depositors and creditors, the wording is, "and stockholders," and this occurs in all instances where this subsection has occasion to refer to depositors and creditors. It requires a different per centum to a consent for a reorganization of the institution as between depositors and other creditors, and stockholders, on the part of depositors and other creditors, seventy-five (75%) per cent. in amount of total deposits and other liabilities, and stockholders, two-thirds (66 2/3) of the institution's outstanding capital. *Page 270 
It will therefore be seen that the term "stockholders" is used by the Legislature to denote a distinct class, separate and apart from depositors and creditors, and we must conclude not only from the nature and history of the legislation, but from the general use of the term "creditors" and a careful reading of the Act, that the Legislature intentionally omitted the word "stockholders" from the subsection authorizing the appointment of a conservator.
It necessarily follows that if the board had no authority of law to appoint a conservator, such appointment as it made is a nullity. And even if the board had the right to appoint a conservator, such conservator could not liquidate the institution unless the board should conclude that the institution for which a conservator has been appointed is insolvent, or in imminent danger of insolvency, and it is necessary in order to protect the interest of depositors and creditors to liquidate such institution.
The practically unauthorized letters from the attorneys of Mechanics Building Loan Association to the board suggesting the appointment of a conservator could not confer jurisdiction on the board, nor amount to waiver. See Moore v. Moore, 187 S.C. 144,197 S.E., 507.
The order appealed from, and for the reason herein stated, is reversed, and the case remanded with leave to plaintiffs-appellants and defendants-appellants to apply to the Court of Common Pleas for such other orders as may be necessary in the cause in conformity with the opinion.
Reversed.
MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.
MR. JUSTICE CARTER did not participate on account of illness. *Page 271