[Civ. No. 12064.   Second Appellate District, Division One.—November 22, 1940.]

BEN A. HILL, Respondent, v. BANK OF SAN PEDRO (a Banking Corporation) et al., Appellants.

John G. Clock, Leon B. Keeton, Jr., Clock, McWhinney & Clock, John Gee Clark, Clyde Doyle, Walter Desmond, Jr., and Wahlfred Jacobson for Appellants.

Lawler & Felix for Respondent.

DORAN, J.—This is an appeal by defendants from a judgment in favor of plaintiff, an attorney at law, entered upon the verdict of a jury awarding plaintiff $14,000 in an action brought by him to recover a fee for professional services rendered.

It appears from the record, and the same is not disputed, that the services in question were rendered for and at the request of one Henry E. Sherer as conservator of the Bank of San Pedro, a state bank, acting as such conservator under appointment by the State Superintendent of Banks pursuant to the provisions of the General Laws of California, popularly known as the Emergency Bank Act (Secs. 135b–135f, added by Stats. 1933, pp. 319–323, incl., Act 652, vol. 1. Deering's General Laws, 1937, pp. 297–301).

It appears that the Bank of San Pedro, which carried on a general banking business at San Pedro, California, was closed

along with other banks on March 1, 1933, under the general banking holiday then proclaimed, which holiday terminated March 15, 1933. However, the Bank of San Pedro was not permitted to reopen by the California State Superintendent of Banks and Mr. Sherer was thereupon appointed by said superintendent to act as conservator for the bank and to take charge of the bank's affairs accordingly. Mr. Sherer was chairman of the board of directors of said bank and respondent had for some time acted as the bank's attorney.

As soon as Mr. Sherer received word of his appointment as conservator he got in touch with respondent, had a conference with him and requested respondent to act as attorney for Mr. Sherer as conservator, which respondent agreed to do. It further appears that respondent acted as such attorney from that time, March 15, 1933, until the termination of the conservatorship in December, 1934.

As to the matter of fees, there was offered and received in evidence at the trial an itemized list of attorney fees paid by the conservator to respondent over a period from May 19, 1933, to December 12, 1934, showing a total of fees paid in the sum of $4,287.50. Respondent admitted receiving these fees. It also appears that respondent filed with the Superintendent of Banks two separate itemized claims for specific legal services rendered to the said conservator, one in the total sum of $1,489.16, and the other in the sum of $553.75, both of which were paid. It therefore appears that during the time respondent acted as attorney for the conservator he actually received the sum of $6,330.41 for certain specified legal services. These respondent testified were separate and apart from the claim here sued upon.

The claim here sued upon appears to have been first filed with the Superintendent of Banks on May 11, 1935. It was formally drawn up and contained an itemized account of the services rendered, the time spent, etc., and was for 602 hours of legal services and consultations in respondent's office, at the rate of $10 per hour, and 938 hours of services and consultations rendered outside the office, at $15 per hour, a total of $20,090 in all. This claim was rejected by the Superintendent of Banks.

Under date of August 22, 1935, the Superintendent of Banks notified respondent by letter of the rejection of his said claim, calling attention to the provisions of section 136 of the Bank Act (a section of the same act hereinabove re-

ferred to, i. e.: Act 652, vol. 1, Deering's General Laws, 1937, p. 301), which provides: "If the Superintendent of Banks doubts the justice and validity of any claim, he may reject the same, and serve notice of such rejection upon the claimant, . . . Any action upon a claim so rejected must be brought within six months after such service."

Respondent commenced the present action on February 13, 1936, praying judgment for his fees in the sum of $20,090.

There appears to have been no definite agreement or understanding as to any total amount of compensation respondent was to receive for all of his services. Respondent estimated that his time and efforts for which he sought compensation were about equally divided between matters related to conservation and those related to reorganization of the bank. Respondent testified that work on plans for reorganization ceased after the Superintendent of Banks accepted an offer of the Bank of America to purchase approximately $1,000,000 worth of the assets of the Bank of San Pedro for cash, since that purchase made the reorganization impossible.

The questions here raised by appellants are: Whether the provisions of the California Bank Act permit or authorize a conservator, appointed as above set forth, to employ an attorney at law to *reorganize* a closed bank and thereby incur any obligation to pay an attorney's fee; whether, assuming that a conservator had no such authority, the sum of $7,000 is a reasonable attorney's fee for services rendered to the conservator in liquidation matters, which services consisted of advice and consultations, when the same attorney had already been paid over $6,000 for services in matters closely connected therewith; and whether, assuming that the conservator *had* such authority to incur the obligation of an attorney's fee for reorganization work, the sum of $14,000 is a reasonable attorney's fee for about 1500 hours work, when the attorney had already received over $6,000 for work closely connected therewith.

Appellants contend that since compensation for the services for which respondent sought to recover had never been fixed by the Superintendent of Banks or reported to any court prior to the suit herein, there was no jurisdiction in the trial court to fix the same in the first instance.

The provisions of the Bank Act (*supra*) pertinent to the question involved are found in section 136 thereof, and pro-

vide: "The compensation of . . . counsel and other employees and assistants, . . . shall be fixed by the superintendent of banks and shall be paid out of the funds of such bank in the hands of the superintendent of banks. Such expenses of liquidation must be reported by the superintendent of banks to the superior court of the county in which the principal place of business of such bank was located, upon each application for payment of dividend." In the instant case the Superintendent of Banks refused to fix the fees by his denial of respondent's application therefor.

It is not necessary to consider the propriety of appellants here urging lack of jurisdiction on the grounds above stated, for even assuming, without deciding, their right to raise the question at this time, their contention is without merit. A similar question was before the Supreme Court of Arizona in *Sawyer* v. *Ellis,* 37 Ariz. 443 [295 Pac. 322], under a like statutory provision. There the court said (at page 325 of 295 Pac.): "On examination of the statute we are of the opinion the contention is not well founded. It provides, not that the superintendent of banks may be allowed an attorney's fee in his accounts, but expressly that the attorney's fee 'shall . . . be paid out of the funds in the hands of the Superintendent of Banks.' We think this is an implied statement by the statute that no personal liability on the part of the superintendent of banks can exist for counsel fees incurred in the liquidation of the bank. Such being the case, if we were also to hold that as a jurisdictional matter the fee of counsel employed must be fixed first by the superintendent of banks, and unless he did so fix it the attorney might not secure a fee from the insolvent bank, it would, in effect leave an attorney who had in good faith performed valuable services at the mere whim or caprice of the superintendent of banks, with no remedy whatever. Such a rule would be highly unjust, and we should not so hold if there is any other possible reasonable construction of the law." The injustice of refusing to grant respondent recourse to the court after the denial of his claim for fees, made in apparent good faith, is at once manifest. (See, also, *Button* v. *Sullivan,* 38 Ariz. 125 [297 Pac. 878]; *Oakley* v. *Davis,* 142 Wash. 432 [253 Pac. 648]; *Kelly* v. *Davis,* 142 Wash. 702 [253 Pac. 653].) The Bank Act in question clearly does not call for any such construction.

■ The principal question raised upon this appeal is whether the conservator had the authority under the California Bank Act to formulate, propose and seek to effect a plan of reorganization of the bank, employ counsel for that purpose and thereby incur an obligation for attorney's fees to be paid out of the funds of the bank in the hands of the Superintendent of Banks.

It is undisputed that a portion of the services for which respondent sought compensation were directly concerned with a plan for reorganization of the bank, which plan had been initiated by the conservator. The record reveals that evidence on behalf of respondent as to such services was admitted over the objection of appellants that the conservator had no authority to employ an attorney to render services in connection with reorganization of the bank.

Appellants argue as follows: ''The problem . . . is whether or not such official may, under a statute neither expressly denying or granting him the power, himself, or through his attorney, actually formulate, draw up and carry through a reorganization of the bank which has come into his hands.'' Concededly, the California Bank Act does not expressly give a conservator such power. Respondent, on the other hand, contends that the said Act impliedly gives a conservator the power to formulate and effect a reorganization. In support of their respective contentions both parties cite authorities in other jurisdictions concerning the provisions of legislation on the subject, some of which is claimed to be similar to that of California. However, certain of the authorities cited by respondent are concerned with express authority to effect reorganization, and can have no application here.

The pertinent provisions of the California Bank Act are found in section 135c thereof, which section provides for the appointment and powers and duties of conservators. Subparagraph (4) of the same section provides for the reorganization of a bank and the manner in which it may be effected. The relation of subparagraph (4) to the other provisions will be taken up later. Concerning the appointment of conservators, their powers and duties, section 135c reads in part as follows: ''Whenever he shall deem it necessary in order to conserve the assets of any bank *for the benefit of the depositors and other creditors thereof,* the Superintendent of Banks may appoint a conservator for such bank and require of him such bond and security as the Superintendent of Banks deems

proper. The conservator under the direction of the Superintendent of Banks shall take possession of the books, records and assets of every description of such bank, and take such action as he may deem necessary to conserve the assets of such bank *pending further disposition of its business as provided by law.* Such conservator shall have all the rights, powers and privileges now possessed by or hereafter given the Superintendent of Banks, with relation to banks of which he has taken charge under the provisions of section 136 of this act, and shall be subject to the obligations and penalties, *not inconsistent with the provisions of this section* to which the Superintendent of Banks now or may hereafter become subject. During the time that such conservator remains in possession of such bank the rights of all parties with respect thereto, *subject to the other provisions of this section,* shall be the same as if the Superintendent of Banks had taken such bank into possession for purposes of liquidation." (Italics added.)

There is nothing in section 136, referred to in the above quotation which could be said to give, either expressly or impliedly, power or authority to effect a reorganization. As to employment of counsel, however, section 136 provides: "The superintendent of banks may employ such counsel and procure such expert assistance and advice as may be necessary in the liquidation and distribution of the assets of such bank, and for that purpose may retain such of the officers or employees of such bank as he may deem necessary. . . . The compensation of . . . counsel . . . and all expenses of supervision and liquidation, shall be fixed by the superintendent of banks and shall be paid out of the funds of such bank in the hands of the superintendent of banks."

As to reorganization, subparagraph 4 of section 135c provides: "Any bank, including a bank in the possession of the Superintendent of Banks pursuant to the provisions of section 136 of this act, may be reorganized under a plan which requires the consent, (a) Of depositors and others creditors, or (b) Of stockholders, or (c) Of both depositors and other creditors and stockholders." It is further provided that such reorganization shall become effective only when the Superintendent of Banks shall be satisfied that the plan of reorganization is fair and equitable as to all depositors, other creditors and stockholders and is in the public interest, and shall have

approved the plan subject to such conditions, restrictions and limitations as he may prescribe, and when, after notice of such reorganization satisfactory to the Superintendent of Banks, either depositors and other creditors of the bank representing at least seventy-five per cent in amount of its total deposits and other liabilities, or stockholders owning at least two-thirds of its outstanding capital stock, or both such depositors, etc., and stockholders, have consented in writing to the plan of reorganization. It is also provided in substance that when such reorganization becomes effective the management of the bank shall be returned to its board of directors by the conservator.

Although it may be assumed, but without deciding, that the Superintendent of Banks has authority to employ counsel to assist in the determination of the question as to whether the plan of reorganization is fair and equitable, nevertheless it must be conceded that plaintiff in the within action was not so employed nor did he act for the Superintendent of Banks in such capacity.

The language employed in section 135c indicates clearly that a conservator is appointed for the benefit and protection of the *depositors* and other *creditors* of the bank. In fact the section expressly provides that such conservator may be appointed whenever the Superintendent of Banks deems such an appointment necessary to conserve the assets for the benefit of the depositors and other creditors. It is also expressly provided that the conservator shall take over the assets, etc., of the bank and act to conserve the same *pending further disposition of the business of the bank as provided by law.* The law provides two general methods of disposing of the business of a bank which has been taken over by the Superintendent of Banks, namely: By liquidation, or, by return of the affairs of the bank to its board of directors, with or without reorganization. (Secs. 135c and 136, Bank Act, *supra.*) The language of the statute clearly indicates that it is the duty of the conservator to act as a receiver for the benefit of the creditors of the bank in the *interim* between the time the bank is taken over by the Superintendent of Banks and the time its business is finally disposed of. It is to be noted that his duty is to *conserve* the assets of the bank. ▆ The verb ''conserve'' is defined as meaning ''to keep in a safe or sound state; to save; to preserve from change or destruction''. Its synonyms are: Maintain, sustain, uphold; defend, protect,

guard, shield, secure. In present usage, to conserve is to keep something (especially institutions, prerogatives, conditions) unimpaired or sound; it stresses the idea of maintenance of an existing condition. See: Webster's New International Dictionary. (cf: The term "conservative".) As used in the statute the term "conserve" connotes careful, conservative action calculated to keep the assets of the bank safe, sound and unimpaired until such time as disposition is made of them.

Section 135c of the California Bank Act, in so far as it pertains to the appointment and duties of a conservator, is substantially the same as section 203 of the Federal "Bank Conservation Act" (12 U. S. C. A., sec. 201 et seq.). Of the latter it has been said: " . . . it was the evident purpose of this legislation, as the very title indicates, to hold the assets of a bank in the condition they were at the time and maintain that status until it could be determined whether the bank could safely continue to transact business, should be reorganized or be liquidated." (*Giffen* v. *First Nat. Bank & Trust Co. of Greenburg, Pa.*, 123 Pa. Super. 476 [187 Atl. 283, 285].) "The purpose of the appointment of a conservator is to hold matters in *status quo* pending a receivership or some change which may allow the bank to reopen." (*Downey* v. *City of Yonkers*, 23 Fed. Supp. 1018, 1022. To same effect see: *Bryce* v. *National City Bank of New Rochelle*, 17 Fed. Supp. 792, 799.)

Respondent argues that the powers given the conservator under section 135c of the California Bank Act are by way of *grant and permission*, and are not by way of *limitation*, and that the provisions of said section are in no way limited by other sections. ■ A conservator appointed under the provisions of the Federal Bank Conservation Act, *supra*, has been held to be a receiver, with limited jurisdiction, subject to the control of the Comptroller of the Currency. (*In re Hober's Estate*, 118 Pa. Super. 209 [180 Atl. 140, 143], citing *Commonwealth* v. *U. S. Fidelity & Guaranty Co.*, 314 Pa. 140, 145 [170 Atl. 686, 91 A. L. R. 229].) The same reasoning is directly applicable to the provisions of the California Bank Act and it is readily seen from the language thereof that a conservator appointed under section 135c was intended to act under the direction and supervision of the Superintendent of Banks in the exercise of all his functions. Unless the contrary were clearly expressed or implied in the

provisions of the statute, it would be inconsistent with the intent and purpose of the act in question to ascribe to the conservator any broader powers than those given to the Superintendent of Banks himself.

■ Moreover, there is a distinction to be drawn between the duties of receivers generally and those of a conservator. "It is the function of a conservator to conserve and not, as in the case of a receiver, to liquidate." (*Gray* v. *First Nat. Bank & Trust Co. of Yonkers*, 263 N. Y. 479 [189 N. E. 557, 559].)

While it is true that provisions governing reorganization of banks are contained in the same section of the act (sec. 135c, above outlined) as are those regarding the duties of a conservator, a reading of the entire section reveals no direct or necessary connection between such a reorganization and the duties and powers of a conservator. It is to be noted that it is not expressly provided that a conservator may reorganize a bank, but that "any bank", including one in the hands of the Superintendent of Banks, may be reorganized under a plan which requires the consent of depositors, creditors or stockholders. The statute does not state who shall formulate such a plan of reorganization. It does, however, expressly provide that ᵗʰᵉ plan must have the approval of the Superintendent of Banks. On the other hand, the powers and duties of a conservator under section 135c are expressly given for the purpose of conservation of the assets of the bank, nothing is said about his power or authority to reorganize. Unless reorganization is necessarily included within the act of conservation it cannot be said that the authority of the conservator to reorganize the bank is necessarily implied from the powers expressly given.

■ In this connection, it should be borne in mind that the corporate entity of the bank is not lost through the conservatorship of its assets. The board of directors and the corporate organization still exist, the power of management only being taken over temporarily by the conservator. (*Westveer* v. *Ter Keurst*, 276 Mich. 277 [267 N. W. 834] ; *Giffen* v. *First Nat. Bank & Trust Co. of Greensburg, Pa, supra.*)

■ This being the case, and banks in the hands of the Superintendent of Banks being expressly permitted to reorganize with the approval of said superintendent, it follows that under the California Bank Act the board of directors of a bank so taken over would have the power to formulate a plan of

reorganization and submit the same to the Superintendent of Banks for his approval, subject of course to the conditions of reorganization provided in the statute. Since the power to reorganize is preserved to the board of directors of a bank under the supervision of the Superintendent of Banks, can it be said that it was the intention of the legislature in enacting the provisions of section 135c also to give that power to a conservator?

Under a statute imposing upon the auditor of the State of Illinois the duty of assuming control of a bank "for the purpose of reorganization or liquidation through receivership", it has been held manifest that the auditor cannot undertake proceedings necessary to reorganize a bank, and that if a reorganization is to be effected it can be done only by the bank, acting through its officers and directors in cooperation with the state banking authorities. (*People* v. *Halsted Street State Bank,* 295 Ill. App. 193 [14 N. E. (2d) 872].)

As pointed out by appellants, a reorganization of a bank is primarily for the benefit of the stockholders. ▊ It must be borne in mind that a conservator under the Bank Act is appointed to act in the interests of the creditors and depositors, not the stockholders. Were the intention otherwise the legislature would have included the word "stockholders" in the provisions of section 135c, above referred to, which state the persons for whom the assets of the bank are to be conserved.

It is noteworthy that in subparagraph 4 of said section, providing for consent to reorganization of a bank, the legislature has included stockholders as a class of persons from whom such consent is to be obtained, but has required a different per centum for a consent of stockholders than for a consent of depositors and other creditors and has clearly set stockholders apart as a class distinct from that of depositors and other creditors.

"It will therefore be seen that the term 'stockholders' is used by the Legislature to denote a distinct class, separate and apart from depositors and creditors, and we must conclude not only from the nature and history of the legislation, but from the general use of the term 'creditors' and a careful reading of the Act, that the Legislature intentionally omitted the word 'stockholders' from the subsection authorizing the appointment of a conservator." *Ex Parte Miller,* 191 S. C. 260 [1 S. E. (2d) 512, 516], construing a statute of South

Carolina similar in language and identical in purpose to the one here in question.

Conceivably, a conservator would not, under the Bank Act, necessarily have to hold himself aloof from the formulation of a plan of reorganization of the bank under his control, but any part taken by him as conservator in such a plan must be in the interests solely of depositors and other creditors as opposed to the interests of the stockholders, in order to keep within the authority given him by the act.

In the instant case the conservator was chairman of the board of directors and a large stockholder of the insolvent bank. Respondent had been attorney for the bank up to the time the conservator was appointed. The plan of reorganization appears to have been formulated and initiated by the conservator.

Under such circumstances it is difficult to say whether in formulating such a plan he was acting in his capacity as chairman of the board and stockholder or in the capacity of conservator. However, as pointed out above, his only authority as conservator was to act in the interests of the depositors and other creditors, and since in formulating a plan of reorganization he must of necessity have been acting also in the interests of the stockholders, it must be assumed that he was then acting not as a conservator but as chairman of the board.

It is necessary to go even further and to hold that because of the nature of the duties of a conservator under section 135c of the Bank Act, in the absence of any authority clearly expressed or implied in such act, a conservator is without authority to formulate and effect a plan of reorganization of a bank under his control. ██ The language of the act in question should not be extended by unnecessary inference beyond the reasonable requirements of the emergency conditions under which it was adopted. (*Mauro* v. *Vervena*, 58 R. I. 24 [190 Atl. 796].)

██ It follows therefore, that the trial court erred in permitting the jury to consider evidence of respondent's services rendered in attempting to effect a plan of reorganization, when determining the value of respondent's services as counsel to the conservator.

██ It appears that the court instructed the jury to the effect that the conservator had the power and authority to

formulate, propose and take steps to effect the reorganization of the bank and to employ respondent as his attorney for this purpose, and refused to give an instruction requested by appellants to the effect that under the provisions of the Bank Act a conservator and the Superintendent of Banks are only permitted to employ such counsel as may be necessary to assist in the liquidation and distribution of the assets of the bank and that there was no authority to employ respondent to render services with respect to any reorganization, all of which appellants assign as error on the part of the court. As may be seen from the foregoing, the instructions given were of course erroneous, as was the refusal to instruct the jury that the conservator had no authority to employ counsel in aid of the reorganization of the bank.

As to that portion of the proposed instruction to the effect that a conservator under the Bank Act is only permitted to employ such counsel as may be necessary to assist in the liquidation and distribution of the assets of the bank, there is a question as to whether this places too narrow a construction upon a conservator's authority to employ counsel. It is true that the only express authority given to the Superintendent of Banks to employ counsel, as provided in section 136, is that he "may employ such counsel and procure such expert assistance and advice as may be necessary in the liquidation and distribution of the assets", and that the authority of the conservator to employ counsel may only be derived from the provision of section 135c that he "shall have all the rights, powers and privileges now possessed by or hereafter given the Superintendent of Banks, with relation to banks of which he has taken charge under the provisions of section 136". However, as noted above, it is the duty of a conservator to conserve the assets and not to liquidate them. Moreover, as a receiver of the assets for the purpose of conservation, the conservator should be entitled to the advice of counsel. This being the case, in reading sections 135c and 136 together and having in mind the general purpose for which the former section was enacted, it would not be placing too strained a construction upon the language of the statute to hold that a conservator may employ such counsel as may be necessary in the conservation of the assets of the bank. In fact, such a construction is wholly consistent with the apparent legislative intent shown by the enactment of the pro-

visions of section 135c. Furthermore, conservation of the assets of a bank is necessary to a proper and equitable liquidation and distribution, and hence employment of counsel to advise and assist in matters of conservation is well within the expressed power to employ such counsel as may be necessary in the liquidation and distribution of the assets.

Therefore, a proper instruction in this regard would be to the effect that a conservator may employ such counsel as may be necessary in the conservation of the assets of the bank for the benefit of depositors and other creditors, and an instruction to the effect that he may only employ such counsel as may be necessary in the liquidation and distribution of the assets of the bank would be erroneous and misleading if given without further amplification.

The authority of the Insurance Commissioner to effect the rehabilitation of an insurance company under the Insurance Code as exemplified in the Pacific Mutual case (*Carpenter* v. *Pacific Mut. Life Ins. Co.*), 10 Cal. (2d) 307 [74 Pac. (2d) 761], cited by respondent, is wholly inapplicable. As pointed out by appellants, such rehabilitation was effected solely for the benefit of the policyholders. Furthermore, the Insurance Code expressly confers such power on the Insurance Commissioner by section 1043 thereof. Any instance of express statutory authorization is of no assistance in deciding the question here involved.

Inasmuch as the errors pointed out above will require a retrial of the issues herein it is unnecessary at this time to consider such of appellants' contentions as are based solely upon the nature and character of the evidence adduced at the first trial.

Appellants' objections to two instructions, one as to compensation for unpaid services and the other as to compensation on a *quantum meruit* basis in the event there was no agreed compensation, are unfounded. If proper services were rendered for which respondent had not been paid, he was entitled to recover compensation therefor, and if there were no set agreement as to the amount of compensation, respondent was entitled to recover the reasonable value of his services, not exceeding the amount prayed for.

Appellants contend that the court erred in rendering judgment against both defendant bank, in liquidation, and the Superintendent of Banks, in his official capacity, and that the

judgment should have been against the Superintendent of Banks, as such, alone. Since the judgment would have to be paid out of the funds of the bank in the hands of the Superintendent in any event, it is difficult to see what difference the form of the judgment makes. The effect of the judgment is the same in either case. As pointed out above, the corporate entity of the bank continued to exist after the Superintendent of Banks took possession of the assets.

Manifestly, it must be assumed that the jury gave due consideration to the court's instructions and also took into account, in arriving at its verdict, the evidence improperly admitted. In the circumstances here presented such errors cannot be regarded as unprejudicial.

For the reasons as above set forth, the judgment is reversed and the cause remanded for a new trial.

York, P. J., and White, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 20, 1941.