[Civil No. 2948.   Filed January 19, 1931.]

[295 Pac. 322.]

E. A. SAWYER, Appellant, v. JOHN A. ELLIS and
T. J. BYRNE, Appellees.

In the Matter of the Estate of THE PRESCOTT
STATE BANK, an Arizona Banking Corpora-
tion, Insolvent.

Mr. J. Gardner Scott, for Appellant.

Messrs. O'Sullivan & Morgan, for Appellee Ellis.

Messrs. Cornick & Crable, for Appellee Byrne.

LOCKWOOD, J.—This is an appeal from an order of the superior court of Yavapai county dismissing a petition of E. A. Sawyer, hereinafter called appellant, to set aside an order directing the payment of fees to John A. Ellis and T. J. Byrne, hereinafter called appellees, as attorneys for the state superintendent of banks, and for other affirmative relief against Ellis. The facts necessary for a determination of this case are not in dispute, and may be stated as follows:

The Prescott State Bank, hereinafter called the bank, was found to be insolvent some time in 1925, and was taken over by the superintendent of banks,

as provided by law. Appellant at the time of the closing of the bank was a creditor thereof. His claim had been duly presented and allowed, but not yet paid, and it is admitted that the assets of the bank were and are not sufficient to pay all the claims allowed. At the time the bank was taken over as above, A. T. Hammons was the superintendent of banks, and appellee Ellis was employed by him as an attorney under an agreement that Ellis should receive an allowance of $175 per month, which should be considered merely as a retainer, and that there should later be a hearing, at which the total value of the legal services should be determined by the court. Ellis performed various legal services under this agreement from the year 1925 up to September 17th, 1929, during part of which time he was assisted therein by T. J. Byrne. In the latter part of the year 1928 Hammons was succeeded as superintendent of banks by James B. Button, who held such office at all times during the progress of this suit.

On September 17th, 1929, appellees filed a petition, setting up the employment of Ellis, the agreement aforesaid, and his services. The petition then further alleged that Button, owing to the date of his appointment, was not at all familiar with the nature and amount of the legal work performed by Ellis and Byrne, and that he had therefore requested petitioners to ask the court to determine the value of such services. The officers of the insolvent bank were duly notified of the hearing, which was held October 30th, 1929, but no notice was given to any of the creditors. Various witnesses testified as to the value of the legal services, and on this evidence the matter was submitted to the court, and the following minute entry was made:

"It is Ordered that said John A. Ellis recover from The Prescott State Bank an attorney fee in the sum of $35,000.00 in addition to the amount already re-

ceived in the way of monthly salary, and that he recover from the Commercial Trust and Savings Bank an attorney fee in the sum of $10,000.00 in addition to the amount already received as a monthly salary. It is provided, however, that any sum already paid to John A. Ellis by either of said banks as an advance on attorney fee be deducted from the above amounts.''

On November 12th, 1929, the following order was filed:

''It is hereby ordered, adjudged and decreed that the sum and amount of Thirty-Five Thousand Dollars ($35,000.00) be allowed and paid to said attorneys, and .that there be deducted therefrom any amounts heretofore advanced, but excluded therefrom the monthly payments that have been allowed.''

Thereafter, and on November 14th, 1929, appellant filed a petition praying that the orders above quoted be set aside and appellees made to account for all moneys received by them, that Ellis be required to pay to the Bank of Jerome, which had become insolvent and was in the same status as the Prescott State Bank, and to the Prescott State Bank, certain debts owing by Ellis to each bank, and that he be made to respond to them for any loss found to have resulted by reason of his misconduct as attorney therefor. Appellees demurred to the petition, and, the matter having been duly presented on the sole question of the jurisdiction of the court to enter the orders complained of, the demurrer was sustained and the petition dismissed, whereupon this appeal was taken.

The only issue which was raised by the petition was whether or not the trial court had the jurisdiction to make the orders questioned. There are numerous allegations of fraudulent conduct on the part of the two banks, and a statement that the superintendent of banks did not use good judgment in his conduct in handling the bank, but nowhere do we find

any allegation that the fee allowed by the court was excessive for the services performed. We therefore proceed to the determination of the question of jurisdiction.

Three things are necessary to confer jurisdiction to make an order upon a court: (1) It must have jurisdiction of the subject matter; (2) it must have jurisdiction of the parties; (3) it must have jurisdiction to make the particular order in question. If these three elements concur, although the order may be erroneous for many reasons, it is not void for lack of jurisdiction. *Brecht* v. *Hammons,* 35 Ariz. 383, 278 Pac. 381. Under the Banking Code of 1922 (Laws 1922, chap. 31), the superior court has substantially the same power over the superintendent of banks during the liquidation of a bank that it has over a receiver in the ordinary insolvency, and in the case at bar the court unquestionably had jurisdiction of the subject matter.

Did it have jurisdiction of the parties interested? It is urged by appellant that as a creditor he is interested in the funds of the insolvent bank, and was therefore entitled to notice in any proceeding which might affect them. It is the claim of appellees, on the other hand, that the superintendent of banks represents the creditors to such an extent that no notice to them is required. Section 46 of the Banking Code, *supra,* reads as follows:

"Section 46. *Relations of Court and Superintendent of Banks When Acting as Liquidating Agent.* When the affairs of any bank have come into the hands of the Superintendent of Banks for liquidation the relations between the Superior Court and the Superintendent of Banks shall be the same as the relations of the Superior Court and a receiver under the laws now existing, and the Superior Court shall have the same authority and jurisdiction over the Superintendent of Banks in such matters of liquidation as it would over receivers appointed by the Court, unless in this Act otherwise provided."

Section 44 of the same Code vests the sole and exclusive ownership and title of all the property and assets of the bank in the superintendent, and bestows upon him very wide powers in regard to handling its affairs, subject, however, to the orders of the superior court. It would appear therefrom that the superintendent of banks is in the position of a statutory receiver of the insolvent bank.

The question as to whom a receiver represents has often been discussed. Generally speaking, he is not an agent of any of the parties, but is merely a ministerial officer of the court. He stands in an indifferent attitude, not representing either the owners of the insolvent estate or the creditors, but really representing the court and acting under its direction, for the benefit of all the parties in interest. The parties to the litigation have not the least authority over him, nor have they the right to determine what liability he may or may not incur; his authority is derived solely from the act of the court appointing him, and he is the subject of its order only. 23 R. C. L. 7, 8. Notwithstanding this, however, it is frequently held that for certain purposes he represents the stockholders and the creditors of a corporation, and it is his duty to assert and protect the rights of each of these several classes of persons. *Cowden* v. *Williams,* 32 Ariz. 407, 55 A. L. R. 1059, 259 Pac. 670; *Klein* v. *Peter,* (C. C. A.) 284 Fed. 797, 29 A. L. R. 1497. Further, section 49 of the Banking Code reads in part as follows:

" . . . The compensation of the special deputy superintendent, counsel and employees and assistants, and all expenses of liquidation, shall be fixed by the Superintendent of Banks subject to the approval of the Superior Court *on notice to the officers of such bank,* and shall, upon the certificate of the Superintendent of Banks, be paid out of the funds in the hands of the Superintendent of Banks." (Italics ours.)

By its terms notice is expressly required to be given to officers of the bank when compensation is to be fixed. Under the rule of *expressio unius exclusio alterius,* therefore, notice need not be given to the creditors of the bank. We conclude that the superior court had sufficient jurisdiction of the interested parties to make the order in question.

Creditors, it is true, may appear at the proper time and object to the accounts rendered by the receiver, or, as in this case, may ask that the order entered be set aside, and appeal from the order denying their petition. *In re Prescott State Bank (Sawyer* v. *Ellis et al.),* 36 Ariz. 419, 286 Pac. 189; *Ritter* v. *Arizona Cattle Co.,* 34 Ariz. 278, 271 Pac. 25. But notice to them is not necessary to give the court jurisdiction to make the order in the first place.

Did the court have jurisdiction to make the particular order in question? It will be seen upon examination of that portion of section 49 of the Banking Code cited above that the compensation of counsel is to be "fixed by the Superintendent of Banks subject to the approval of the Superior Court," and that it is to be "paid out of the funds in the hands of the Superintendent of Banks." It is urged by appellant that counsel in a case of this nature are the personal representatives of the superintendent of banks, and not of the estate of the insolvent bank, and that the rule therefore is the same as we held it to be in the case of *Ellsworth* v. *Struckmeyer,* 27 Ariz. 484, 232 Pac. 56, to the effect that an attorney for an executor or administrator may not ask independently that the court fix his compensation, but that the executor or administrator must himself ask for the allowance of an attorney's fee in his accounts, and, if he fails to do so, the only remedy of the attorney is a personal suit against the former.

On examination of the statute we are of the opinion the contention is not well founded. It provides, not

that the superintendent of banks may be allowed an attorney's fee in his accounts, but expressly that the attorney's fee "shall . . . be paid out of the funds in the hands of the Superintendent of Banks." We think this is an implied statement by the statute that no personal liability on the part of the superintendent of banks can exist for counsel fees incurred in the liquidation of the bank. Such being the case, if we were also to hold that as a jurisdictional matter the fee of counsel employed must be fixed first by the superintendent of banks, and unless he did so fix it the attorney might not secure a fee from the insolvent bank, it would, in effect, leave an attorney who had in good faith performed valuable services at the mere whim or caprice of the superintendent of banks, with no remedy whatever. Such a rule would be highly unjust, and we should not so hold if there is any other possible reasonable construction of the law.

A somewhat similar question has been before the Supreme Court of Washington, and it was there held under a statute in many respects like ours that, if the party who, under the statute, was given the duty of fixing the compensation for any reason failed to act, the attorney performing the services might make direct application to the court therefor. *Oakley* v. *Davis*, 142 Wash. 432, 253 Pac. 648; *Kelly* v. *Davis*, 142 Wash. 702, 253 Pac. 653. If this be true when the receiver absolutely refuses to fix any fee, much more is it so when he states that he is unable, for good reasons, to determine the true value of the services, and joins with counsel in a request that the fee be fixed by the court.

We conclude, therefore, both on reason and authority, that the court had jurisdiction to make the particular order complained of. Since the attack was on the jurisdiction of the court to allow any fee at all, and not on the amount thereof, since the order provides that any advances made to appellees are to be

deducted from such fee, and since it would be the duty of the superintendent of banks to deduct also any indebtedness due from them to the bank, the trial court properly sustained the demurrer to the petition, and its order of dismissal is therefore affirmed.

McALISTER, C. J., and ROSS, J., concur.