IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PAUL MASHNI, Court-appointed receiver, *Petitioner*,

*v.*

THE HONORABLE GEORGE H. FOSTER, Judge of the SUPERIOR COURT OF THE STATE OF ARIZONA, in and for the County of MARICOPA, *Respondent Judge*,

SUNNYSLOPE HOUSING LIMITED PARTNERSHIP, an Arizona limited partnership; FIRST SOUTHERN NATIONAL BANK, *Real Parties in Interest*.

No. 1 CA-SA 13-0250
FILED 4-29-2014

Petition for Special Action from the Superior Court in Maricopa County
No.  CV2010-028618
The Honorable George H. Foster, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Quarles & Brady LLP, Phoenix
By John M. O'Neal, Walter J. Ashbrook
*Counsel for Petitioner*

Lewis Roca Rothgerber LLP, Phoenix
By Susan M. Freeman, Eric Wanner
*Counsel for Real Party in Interest Sunnyslope Housing Limited Partnership*

Gallagher & Kennedy, P.A., Phoenix
By John R. Clemency, Janel M. Glynn
*Counsel for Real Party in Interest First Southern National Bank*

---

## OPINION

Presiding Judge Peter B. Swann delivered the opinion of the Court, in which Judge Maurice Portley and Judge Samuel A. Thumma joined.

---

**S W A N N**, Judge:

¶1        This case requires us to examine the limits of the immunity afforded to court-appointed receivers.

¶2        Receiver Paul Mashni petitions for special action relief from the superior court's ruling denying him immunity from suit for alleged mismanagement of receivership assets.  The court's order permitting the damage action against Mashni to proceed was not based upon a finding that he had exceeded his powers under the order of appointment, but rather on the theory that a receiver can face liability if actions taken pursuant to the order cause a "material detriment" to any "interested party."  We accept jurisdiction and grant relief.  We hold that a court-appointed receiver is immune from suit unless the appointing court finds that the receiver has acted outside the scope of the order of appointment. We further hold that the court cannot charge a receiver with a fiduciary duty to maximize economic benefit for adverse parties simultaneously. Finally, we hold that a party aggrieved by a receiver's actions must promptly inform the court and seek its intervention before bringing an action for damages.

### FACTS AND PROCEDURAL HISTORY

¶3        Since 2005, Sunnyslope Housing Limited Partnership ("Sunnyslope") has been involved in the construction and operation of an apartment complex in Phoenix.  Sunnyslope financed the construction with a senior private loan, guaranteed by the federal government and secured by a deed of trust on the apartment complex, and two junior loans

from the Arizona Department of Housing and the City of Phoenix, respectively. Sunnyslope intended to operate the apartment complex as a low-income-housing project to qualify for the Low Income Housing Tax Credit ("LIHTC") program. *See* I.R.C. § 42. This investment strategy was purportedly worth several million dollars. Partly to ensure continued LIHTC eligibility, Sunnyslope and the junior lenders agreed to and recorded covenants requiring the entire apartment complex to be leased to low-income households. The covenants were expressly subordinated to the senior private loan, but "binding upon the Owner's successors in title and all subsequent owners and operators." Under the agreement, the covenants were to automatically terminate in the event of foreclosure.

¶4 Sunnyslope defaulted on the senior loan after completing construction. The federal government fulfilled its loan guarantee obligation and sold the senior debt to First Southern National Bank ("First Southern"), which shortly thereafter filed a motion to appoint Mashni as receiver of the apartment complex. Before the hearing on the motion, Sunnyslope e-mailed First Southern's counsel to confirm that it "agree[d] to a stipulated receivership per the proposed order appointing the receiver." Sunnyslope did not appear at the appointment hearing, and at no point sought to amend the appointment order or change the bond amount.

¶5 The superior court appointed Mashni as receiver in October 2010. The appointment order authorized Mashni to, among other tasks: "enter into, modify and/or reject contracts affecting any party or the Property and to exercise rights existing under such contracts, including but not limited to filing suit thereon, and/or evicting tenants from the Property"; "market and rent, as [he] believe[d was] in the best interests of the Receivership Estate"; and "use such measures, legal or equitable, as [he], in consultation with and with the consent of [First Southern], deem[ed] appropriate, desirable, [or] necessary . . . to implement and effectuate the provisions of the Loan Documents [relating to the senior loan]." The order defined in great detail the property that Mashni took possession of, but excluded any reference to the low-income-housing covenants or related tax credits.

¶6 Mashni knew that Sunnyslope had operated the apartment complex as low-income housing before the receivership appointment, but he began to lease the apartments at market rates almost immediately after his appointment. Mashni later testified that he understood the appointment order authorized him to stop operating the apartment complex as low-income housing:

I knew it was low income housing, but I knew it had also failed as low income housing so one of the stipulations that we made to even be considered to be the receiver was we had to have the ability to run it as a market rate property. . . . [I d]idn't have an agreement with anybody except for the fact that when I was asked to be the Receiver I made sure that the receivership order allowed me to run it as a market property.

¶7 Sunnyslope initially learned of Mashni's noncompliance with the low-income-housing covenants when he filed his first receivership report in December 2010, approximately two months after his uncontested appointment. Days after receiving the report, Sunnyslope contacted Mashni's counsel to confirm whether Mashni was disregarding the covenants. His counsel replied that "[a]ll new leases [were] being completed at market rates on conventional leases."

¶8 Mashni had scheduled a foreclosure sale of the apartment complex for February 1, 2011, but it never took place because Sunnyslope sought Chapter 11 bankruptcy reorganization the day before. Sunnyslope commenced the bankruptcy to prevent the foreclosure, which would have automatically terminated the covenants meant to preserve LIHTC eligibility. Mashni remained in possession of the apartment complex while the bankruptcy case was pending, and in May 2011 the bankruptcy court ruled that Mashni had to comply with the low-income-housing covenants. The following month Mashni relinquished possession to Sunnyslope's designee and began winding up the receivership estate.

¶9 At the end of 2011, the bankruptcy court vacated the automatic stay to permit Mashni to move for discharge of the receivership. The bankruptcy court ordered Mashni to obtain from the superior court "such other determinations as may be necessary to wind up the receivership, including, without limitation, findings of fact confirming whether [he] acted at all times during the Receivership Action in accordance with, and within the scope of, the Receivership Order." It further ordered that "[a]ny claims the Debtor may assert against the Receiver . . . shall be raised by the Debtor in connection with the Wind-Up Proceedings in the Superior Court."

¶10 Accordingly, Mashni moved the superior court to discharge the receivership, exonerate the receiver's bond, and approve payment of various receivership expenses. Sunnyslope objected, primarily on grounds that Mashni had jeopardized its LIHTC eligibility by failing to

operate the apartment complex in compliance with the low-income-housing covenants. Sunnyslope further alleged that Mashni had improperly settled an insurance claim, and that he had improperly used receivership funds to pay for the preparation of the foreclosure sale. Before the matter proceeded to oral argument, Sunnyslope also filed a third-party complaint against Mashni raising similar allegations.

¶11     The superior court eventually dismissed Sunnyslope's third-party complaint, reasoning that

> [t]he order appointing the Receiver in this case is very broad. Nothing requires him to maintain any of the tax credits. It is argued that the Receiver elected not to continue seeking such credits in an effort to rent the units in the complex as a means to make it viable. The complex, it is alleged, had fallen into disrepair and resources were needed to operate it properly. The Defendant has not submitted any facts or submitted any authority that compels the Receiver to continue with the Section 8 program in the event the Receiver decides that in his business judgment that program need not be continued. . . . [Moreover,] the Defendant failed at any time to come in seeking any form of protection or relief until the Receiver sought to be released and his bond exonerated. Suffice it to say that the Court is not persuaded that the Receiver has any personal liability and that any liability extends beyond the amount of the bond.

¶12     The court then found that Sunnyslope was entitled to a hearing on Mashni's motion to exonerate the receiver's bond and allowed limited discovery. At the bond-exoneration hearing, Mashni argued that the court's earlier ruling confirmed his immunity from suit. The court responded:

> [Y]ou read this order too broadly. This Court never ruled that as a matter of law it finds that the Receiver has immunity. That is not in this order. . . . [W]hether or not the Receiver is going to be immune is a question of fact for the Court to decide in consideration of the facts. And we never had any evidence taken as to what happened.
> . . . .
>      The purpose of [this] hearing . . . is to find out whether the Receiver complied with the order appointing him, whether the Receiver properly discharged those duties

or not. And if he didn't, then the matter . . . of his receivership should not be discharged . . . .

Ultimately, the court found that "sufficient evidence exist[ed] to make a prima facie case against the Receiver" and denied Mashni's motion. In relevant part, the minute entry provides:

> While the order appointing the Receiver allows him to reject certain agreements, he has another responsibility, which is to protect the rights of . . . all the parties to the transaction, including the Defendant. Thus, if rejecting a contract results in a material detriment to the title holder or any other interested party, then the Receiver may be culpable. Simply put, just because the order says the Receiver may reject contracts does not mean he should do this on whim and caprice, or as in this case, because he had never operated a project of this type and perhaps did not know how.

> In this case, the Court finds the failure to operate the property under the affordable housing program and rejecting the requirements of the various covenants that attached to the land, compromised the ability of the Defendant to realize and earn substantial tax credits that could be worth over millions of dollars. . . . Nothing in this decision should be taken, however, to establish as a matter of law a breach of fiduciary duty. Rather, the Court finds there is sufficient evidence in the record that the Receiver did not faithfully discharge his duties taking into account the requirements of the law such that this Court finds he is not immune. A trier of fact will have to determine causation and the actual damages, if any, that have been suffered by the Defendant.

Neither the minute entry nor the hearing transcript contains a finding by the court that Mashni violated the order of appointment. The court allowed Sunnyslope to file a new third-party complaint against Mashni, and this special action followed.

## DISCUSSION

¶13 Mashni contends that the superior court abused its discretion by denying him immunity from suit for alleged mismanagement of the receivership. We agree.

¶14         We accept jurisdiction over this special action because when one is erroneously forced to stand trial, he has lost the benefit of immunity, even if he is found not liable. *Henke v. Superior Court (Kessler)*, 161 Ariz. 96, 99-100, 775 P.2d 1160, 1163-64 (App. 1989). "Consequently, a defendant who asserts an immunity has no adequate remedy at law by direct appeal after trial." *Salt River Valley Water Users' Ass'n v. Superior Court (Shoemaker)*, 178 Ariz. 70, 73, 870 P.2d 1166, 1169 (App. 1993).

¶15         Under Ariz. R. Civ. P. 66 and A.R.S. § 12-1241, a court may appoint a receiver as an equitable remedy to protect property subject to pending litigation. The appointing court determines the receiver's authority, *Sawyer v. Ellis*, 37 Ariz. 443, 448, 295 P. 322, 324 (1931), and allows the receiver to "share[ ] the judge's judicial immunity" so long as the receiver acts within the scope of the appointment order, *Kohlrautz v. Oilmen Participation Corp.*, 441 F.3d 827, 836 (9th Cir. 2006) (quoting *Anes v. Crown P'ship*, 932 P.2d 1067, 1071 (Nev. 1997)). Logically, it follows that "a receiver may be personally liable if he or she acts outside the authority granted by the court." *Id.* (quoting *Anes*, 932 P.2d at 1071); *see also* 65 Am. Jur. 2d *Receivers* § 295 (2014) ("Personal liability of a receiver arises . . . from his or her wrongful acts not within the scope of his or her authority as determined by the statutes and orders and directions of the court under which he or she acts or omits to act.").

¶16         This authority provides that a receiver is immune from suit unless the appointing court specifically finds that the receiver has acted outside the scope of the appointment order. The superior court in this case misconceived the nature of immunity by subjecting Mashni to review of his business judgment. No such review was warranted. Like the court itself, the receiver's immunity from suit exists by virtue of the *context* in which he acts, not the *content* of his actions. *See Haw. Ventures, LLC v. Otaka, Inc.*, 164 P.3d 696, 743-44 (Haw. 2007) (holding that a court-appointed receiver is entitled to absolute immunity when acting within the scope of and in accordance with the appointment order, even for "negligent violations of duties imposed upon her by law"); *B.K. v. Cox*, 116 S.W.3d 351, 357 (Tex. App. 2003) ("Generally, once an individual is cloaked with derived judicial immunity because of a particular function being performed for a court, every action taken with regard to that function—whether good or bad, honest or dishonest, well-intentioned or not—is immune from suit.").

¶17         Whether a receiver has acted within the scope of the appointment order is a question of fact. *See Kohlrautz*, 441 F.3d at 830. In this case, the broadly written appointment order authorized Mashni to

"reject contracts affecting any party or the Property." The low-income-housing covenants involved in this case are contractual obligations. *See Pinetop Lakes Ass'n v. Hatch*, 135 Ariz. 196, 198, 659 P.2d 1341, 1343 (App. 1983) ("[A] grantee who accepts a deed containing restrictive covenants has entered into a contractual relationship."). It is generally accepted that "possession does not obligate a receiver to carry out the executory contracts of the debtor, and subject to the order of the court, he or she may have a reasonable time after his or her appointment to elect whether to adopt any such contract or reject it." 65 Am. Jur. 2d *Receivers* § 164; *see also D.R. Mertens, Inc. v. State ex rel. Dep't of Ins.*, 478 So. 2d 1132, 1134 (Fla. Dist. Ct. App. 1985) ("[T]he law is clear that there can be no breach, anticipatory or otherwise, of an executory contract by a receiver unless the receiver specifically elected to be bound thereby."); *Anes*, 932 P.2d at 1069 ("As a general rule, state law allows receivers to reject, within a reasonable time, outstanding executory contracts of the owner of the estate which is being administered."). And a plain reading of Mashni's appointment order authorized him to reject the low-income-housing covenants immediately upon taking possession as receiver of the apartment complex. Moreover, the appointment order directed Mashni to "market and rent, as [he] believe[d was] in the best interest of the Receivership Estate," and to "use such measures, legal or equitable, as [he] . . . deem[ed] appropriate, desirable, [or] necessary . . . to implement and effectuate the provisions of the Loan Documents [relating to the senior loan]." We agree with the superior court's statement in its order dismissing the original third-party complaint that "[n]othing requires him to maintain any of the tax credits."

¶18    The superior court never found that Mashni had acted outside the scope of the appointment order before it stripped him of immunity. Instead, the court based its decision on a finding that Mashni had a "responsibility . . . to protect the rights of . . . all the parties to the transaction, including [Sunnyslope]." But this "responsibility" was altogether absent from the appointment order, and we can find no logical basis upon which a receiver can be held to such a duty.

¶19    A receiver is a ministerial officer of the court who acts under the appointing court's authority, and not to promote the interest of any specific party. *Sawyer*, 37 Ariz. at 448, 295 P. at 324 ; *Midway Lumber, Inc. v. Redman*, 4 Ariz. App. 471, 472, 421 P.2d 904, 905 (1967).

> Generally speaking, [the receiver] is not an agent of any of the parties, but is merely a ministerial officer of the court. He stands in an indifferent attitude, not representing either

> the owners of the insolvent estate or the creditors, but really representing the court and acting under its direction, for the benefit of all the parties in interest. The parties to the litigation have not the least authority over him, nor have they the right to determine what liability he may or may not incur; his authority is derived solely from the act of the court appointing him, and he is the subject of its order only.

*Sawyer*, 37 Ariz. at 448, 295 P. at 324. Put differently, a receiver's duty is fidelity to the court and its orders -- it is not a classic fiduciary duty to any party. Like the court itself, the receiver is a neutral whose actions may redound to the benefit of some and the detriment of others. When parties' interests are adverse, it is simply impossible to hold a receiver to a fiduciary duty to advance the private interests of all. A receiver may therefore be liable to interested parties for harm caused by deviation from the order of appointment, but cannot be liable for actions taken pursuant to the order that benefit some more than others.

¶20 We further observe that despite ample opportunity to do so, Sunnyslope never sought to amend the order of appointment to compel Mashni's compliance with the low-income-housing covenants. In the words of the superior court, "[Sunnyslope] failed at any time to come in seeking any form of protection or relief until the Receiver sought to be released and his bond exonerated." When a party is aware of a perceived defect in a receiver's performance of his duties, equity demands that the court be informed and given an opportunity to right the wrong through its supervisory powers. If a party does not afford the court such an opportunity, it is difficult to conceive of a case in which it can later seek damages for the harm that it failed to take measures to prevent. *See Irwin v. Pac. Am. Life Ins. Co.*, 10 Ariz. App. 196, 201, 457 P.2d 736, 741 (1969) ("Equity aids the vigilant, not those who slumber on their rights."). Our holding in this regard is guided by the general rule that a receiver cannot be sued without permission of the appointing court. *Barnette v. Wells Fargo Nev. Nat'l Bank*, 270 U.S. 438, 441 (1926). It is likewise consistent with the notion that the appointing court "is in the best position to clarify the scope of its own order and to entertain suggestions that the order be modified to meet changing circumstances." *S.E.C. v. Lincoln Thrift Ass'n*, 557 F.2d 1274, 1280 (9th Cir. 1977).

## CONCLUSION

¶21 We vacate the superior court's ruling denying Mashni immunity from suit and remand this case for further proceedings

consistent with this opinion. In the exercise of our discretion, we decline to address the remaining issues raised in Mashni's petition for special action.

**¶22** Both parties request attorney's fees and costs, citing ARCAP 21 and Rule 4(g) of Arizona Rules of Procedure for Special Actions. However, neither ARCAP 21 nor Rule 4(g) provides a substantive basis for a fee award. *See Ezell v. Quon*, 224 Ariz. 532, 539, ¶ 31, 233 P.3d 645, 652 (App. 2010); *State v. Shipman*, 208 Ariz. 474, 476, ¶ 7, 94 P.3d 1169, 1171 (App. 2004). Mashni also cites the appointment order, which grants him authority to hire counsel "necessary to assist [him] in the discharge of [his] duties." But the order also requires Mashni to obtain court approval for receiver's fees and administrative expenses. In the exercise of our discretion, we therefore deny both parties' requests for attorney's fees in this special action.

