NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

MW2 INVESTMENTS LLC, *Plaintiff/Appellant/Cross-Appellee*,

*v.*

IMH SPECIAL ASSET NT 168 LLC, et al., *Defendants/Appellees/Cross-Appellants.*

R. STEWART HALSTEAD, et al., *Cross-Appellees.*

No. 1 CA-CV 18-0271
FILED 12-19-2019

---

Appeal from the Superior Court in Maricopa County
No. CV 2016-051187
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

---

COUNSEL

Jeffrey M. Proper PLLC, Phoenix
By Jeffrey M. Proper
*Counsel for Plaintiff/Appellant/Cross-Appellee*

Snell & Wilmer LLP, Phoenix
By Benjamin W. Reeves, Christopher H. Bayley, James G. Florentine
*Counsel for Defendants/Appellees/Cross-Appellants*

Broening, Oberg, Woods & Wilson, Phoenix
By Brian Holohan
*Counsel for R. Stewart Halstead and R. Stewart Halstead, P.C.*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

---

**C A M P B E L L**, Judge:

¶1         MW2 Investments LLC ("Investments") appeals the superior court's orders dismissing its complaint and denying it leave to amend its complaint against IMH Special Asset NT 168, LLC and several other related entities (collectively, "IMH"). IMH cross-appeals the court's denial of its request for sanctions pursuant to Arizona Rule of Civil Procedure ("Rule") 11. For the following reasons, we affirm.

**BACKGROUND[1]**

¶2         Investments is a member of Seagoville Investments, LLLP ("Seagoville"). The present case is predicated on a judgment and subsequent receivership entered in a separate lawsuit involving Seagoville ("Lawsuit 1"). In that case, IMH obtained a judgment (the "Judgment") against the then-general partner of Seagoville, David Maniatis, and his revocable trust (collectively, "Judgment Debtors"). With that judgment secured, IMH asked the court to appoint a receiver to manage all assets owned or controlled by the Judgment Debtors and aid IMH in executing on the Judgment. As relevant to this case, the court appointed MCA Financial Group, Ltd. ("Receiver") as a receiver pursuant to Rule 66(b)[2] (the "Receivership Order"). *See* A.R.S. § 12-1241 (empowering the superior court to "appoint a receiver to protect and preserve property or the rights of parties"). The court expressly authorized the Receiver to "take immediate

---

[1]         Investments asks to incorporate a brief filed by the former general partner of Seagoville, David Maniatis, in a related appeal. Although ARCAP 13(h) allows parties to join in a single brief or "an appellant or appellee [to] adopt by reference any part of the brief of another party," the rule applies only to briefs filed in the same appeal. We thus grant IMH's motion to strike Investments' incorporation of David P. Maniatis' opening brief.

[2]         The Arizona Rules of Civil Procedure were amended during the pendency of this case. No material changes affect the outcome of this appeal and, therefore, we cite to the current Rules unless noted.

possession, custody and control of all . . . partnership interests . . . owned . . . or controlled in whole or in part by" Maniatis, as the judgment debtor, and to "manage and takeover all of [Maniatis'] business affairs." The court also charged the Receiver with the duty to exercise rights in the receivership estate "for the benefit of [Maniatis'] creditors."

¶3        After the Receiver identified over 150 different partnerships, corporations, and trusts that Maniatis created and controlled, the receivership court amended the initial Receivership Order, authorizing the Receiver to take control of many of the businesses and identify assets to be gathered into the receivership estate. This amended order included Seagoville, an entity the court determined Maniatis owned and controlled: "Seagoville is ultimately owned and controlled by Judgment Debtors David P. Maniatis ("Maniatis") and/or the DPM-TT Trust (the "Trust"), and not subject to any applicable exemptions from execution. Accordingly, Seagoville is subject to administration under this Court's MCA Receivership Order. "

¶4        Before the Receiver was appointed, Maniatis had executed an agreement (the "Seagoville PSA") on behalf of Seagoville to sell approximately 12 acres of property in Texas ("the Seagoville Property") to a buyer (the "Buyer") for a sum certain. After execution of the Seagoville PSA, the court appointed a receiver. When Maniatis failed to timely close the sale, the Buyer sued Seagoville and the Receiver seeking specific performance.

¶5        Rather than litigate the specific performance action, the Receiver chose to perform under the Seagoville PSA. The Receiver, joined by IMH, asked the receivership court to (1) allow the Receiver to exercise Seagoville's rights as seller pursuant to the Seagoville PSA, and (2) approve a related agreement between the Buyer and IMH that authorized IMH to purchase the Buyer's interest in the Seagoville PSA. The Receiver notified the court that IMH intended to assemble the Seagoville Property with several other parcels that could then be sold together for more money than if each parcel was sold separately. The receivership court granted the motion, finding "Seagoville [was] ultimately owned and controlled by [the Judgment Debtors]" and therefore was "subject to administration under [the] MCA Receivership Order." The court also found that all parties who claimed an ownership or management interest in Seagoville or the Seagoville Property received proper notice of the joint motion. The Receiver completed the transaction pursuant to the Seagoville PSA, and after IMH acquired ownership rights, it sold the assembled properties to a third-party.

All proceeds from the sale of the Seagoville Property went into the receivership estate.

¶6        After IMH completed the purchase of the property, Investments attempted to intervene in the receivership proceeding. Investments moved to set aside the sale and void the appointment of the Receiver. In the alternative, Investments asked the receivership court to give it some of the proceeds of the sale of the Seagoville property. The receivership court denied Investments' motion, finding that Investments had not shown a right to intervene because its interests were already represented in the case by Maniatis, the court had already addressed the relief sought, and "if [Investments] has an interest in a receivership asset, [such as the Seagoville Property or its sale proceeds,] there is a process for [Investments] to protect that interest by submitting a claim."

¶7        The receivership court then granted the Receiver's motion to distribute the sale proceeds to IMH, explaining it had previously determined the proceeds from the Seagoville sale were to be "made available for [IMH's] execution" on the Judgment. Noting Maniatis' objections to the distribution, the court went on to explain that the Seagoville Property is owned and controlled by the Judgment Debtors [Maniatis and his various business organizations] and subject to the Receivership and Receivership Order. The Receiver then filed a motion to wind-up the estate and make its final distributions to the creditors. Investments filed a notice of adverse impact to its interests. The court granted the Receiver's motion and denied and overruled "[a]ny and all objections to the Wind-Up Motion." As provided in that order, the Receiver distributed the remaining assets of the receivership estate and was discharged by the court.

¶8        Investments then initiated the current lawsuit, on its own behalf and derivatively on behalf of Seagoville ("Lawsuit 2"). It alleged a 17% interest in Seagoville and sued to unwind the sale of the Property, claiming the sale occurred only through IMH's "misrepresentations, concealment of facts and other misconduct and fraud on the Court." Investments alleged six causes of action: (1) accounting and distribution; (2) sums owed under a contract; (3) fraud; (4) constructive fraud; (5) negligent misrepresentation; and (6) unjust enrichment.

¶9        IMH filed a motion to dismiss Lawsuit 2. The superior court granted IMH's motion to dismiss and denied Investments' oral motion for leave to amend the complaint, reasoning "there is no legal theory on which [it] could prevail." IMH sought attorney fees, costs, and sanctions against

Investments; its sole member/manager, Robert M. Semple; its attorney, R. Stewart Halstead; and his firm, R. Stewart Halstead, P.C. The court denied the request for sanctions under Rule 11 but awarded $63,062.12 in attorney fees and $1,581.72 in taxable costs under A.R.S. §§ 12-341.01 and 12-341. Investments timely appealed the superior court's dismissal of its claim and IMH timely cross-appealed the court's denial of sanctions.

## DISCUSSION

### I.     Investments' Claims on Appeal

¶10      We review the dismissal of a claim under Rule 12(b)(6) de novo. *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012). In doing so, we "assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts." *Id.* at 356, ¶ 9 (citation omitted). However, we will not "speculate about hypothetical facts that might entitle the plaintiff to relief," *Cullen v. Auto-Owners Ins.*, 218 Ariz. 417, 420, ¶ 14 (2008), nor will we "accept as true allegations consisting of conclusions of law, inferences or deductions that are not necessarily implied by well-pleaded facts, unreasonable inferences or unsupported conclusions from such facts, or legal conclusions alleged as facts." *Jeter v. Mayo Clinic Ariz.*, 211 Ariz. 386, 389, ¶ 4 (App. 2005) (citation omitted).

¶11      The premise of each of Investments' claims is that it was improperly deprived of a share in the benefits of the sale of the Seagoville property when the Receiver executed the sale to IMH and IMH subsequently packaged the property for sale to a third party. Investments argues the superior court erred by concluding that the receivership court's rulings, along with the Receiver's judicial immunity, barred its claims. Investments contends the receivership court's orders cannot bar its claims in this case because (1) IMH committed fraud on the receivership court, (2) the receivership court's orders and rulings are void because the Judgment was partially vacated on appeal, and (3) the receivership court did not have subject matter jurisdiction to appoint a receiver.[3]

#### A.     New Arguments may not be made on Appeal

¶12      For the first time on appeal, Investments argues (1) the appointment of the receiver over Seagoville's assets constituted an "'event of withdrawal' under A.R.S. § 29-323"; (2) Seagoville, rather than Maniatis

---

[3]      Although Investments did not raise its attack on subject matter jurisdiction below, in our discretion, we address it here. *See Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 503 (1987).

and the other Judgment Debtors, owned the partnership assets; (3) it "alleged sufficient facts to support liability for conspiracy" between IMH and the Receiver amounting to a breach of fiduciary duty; and (4) it "alleged sufficient facts to support liability [of IMH] for aiding and abetting" the Receiver in breaching its fiduciary duties. Generally, "an appellate court will not consider issues not raised in the trial court." *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 503 (1987). Because Investments failed to raise these arguments below, we decline to consider them for the first time on appeal.

### B. Subject Matter Jurisdiction

¶13 Investments challenges the receivership court's subject matter jurisdiction in the underlying matter based on theories of partnership law in Lawsuit 1. While it does not raise a challenge to the court subject matter jurisdiction in the instant case, as a practical matter, the receivership court was acting with subject matter jurisdiction. Subject matter jurisdiction is a court's statutory or constitutional authority to hear a certain type of case. *Sheets v. Mead*, 238 Ariz. 55, 57, ¶ 9 (App. 2015). The superior court has statutory authority to appoint a receiver. *See* A.R.S. § 12-1241. Likewise, under Rule 66, a court may appoint a receiver as an equitable remedy to protect property that is subject to pending litigation. Moreover, if the receiver acts within the scope of the court's appointment order, he is entitled to judicial immunity. *Mashni v. Foster ex rel. County of Maricopa*, 234 Ariz. 522, 527, ¶¶ 15–16 (App. 2014). This broad protection applies to every action taken, "whether good or bad, honest or dishonest, well-intentioned or not," and is not waived unless the receiver acts outside the scope of the order appointing him. *Id.* (quoting *B.K. v. Cox*, 116 S.W.3d 351, 357 (Tex. App. 2003)). Therefore, the receivership court acted with statutory authority and had subject matter jurisdiction over the proceeding and parties.

### C. Converting Rule 12(b)(6) Motion into Motion for Summary Judgment

¶14 Investments next argues the superior court erred in denying its request to convert the motion to dismiss—brought under Rule 12(b)(6)—to a motion for summary judgment under Rule 56(A). In support of this argument, it notes that IMH relied on matters outside of the pleadings to support its motion. Under Rule 12(d), a motion to dismiss for failure to state a claim that presents "matters outside the pleading," which are "not excluded by the court . . . must be treated" as a motion for summary judgment. The rule, however, does not require conversion when the motion refers to documents that are matters of public record or matters

central to the complaint. *Strategic Dev. & Constr., Inc. v. 7th Roosevelt Partners, LLC*, 224 Ariz. 60, 64, ¶¶ 13–14 (App. 2010).

¶15 The documents attached to IMH's motion to dismiss relate directly to the appointment and actions of the Receiver, which the complaint itself referenced, consisting of records from the receivership litigation. Because the court considered only records that were central to the complaint, it was not required to treat the motion to dismiss as a motion for summary judgment. *Id.* at 63, 64, ¶¶ 8, 13.

### D. Alleged Fraud Upon the Receivership Court

¶16 Investments alleges the Receiver and IMH engaged in "bad faith, dishonest and ill-intentioned acts and omissions for the sole benefit of the creditor and to the direct prejudice and harm" of Investments. But the record illustrates that the challenged actions by the Receiver—specifically, selling the Seagoville Property pursuant to the Seagoville PSA and distributing the proceeds from that sale—were specifically authorized in the Receivership Order and were conducted with the express permission of the receivership court.

¶17 As stated, the receivership court ordered the Receiver to act "for the benefit of the Judgment Debtors' creditors." In the receivership action, Maniatis complained that the Receiver was acting in IMH's interest, but the court rejected his objection and explicitly found the Receiver was acting pursuant to the Receivership Order, which defines its scope of authority.

¶18 To the extent Investments now challenges acts of the Receiver taken pursuant to the Receivership Order, its claims necessarily fail. As the receivership court held in rejecting Investments' motion to set aside the sale, Investments' remedy was to submit a claim in the receivership. The wind-up order entered by the receivership court finally disposed of the matter.

¶19 Investments argues, however, that the Receivership Order does not bar its claims because it was procured by extrinsic fraud. Extrinsic fraud includes "deception practiced by the successful party in purposely keeping his opponent in ignorance," *Bates v. Bates*, 1 Ariz. App. 165, 168 (1965) (citation omitted), and may justify vacating a prior judgment, *see Dockery v. Cent. Ariz. Light & Power Co.*, 45 Ariz. 434, 454 (1935). The party seeking relief from a judgment based on extrinsic fraud must establish the existence and non-disclosure of the evidence in question. *See Northwest Bank (Minn.), N.A. v. Symington*, 197 Ariz. 181, 185–87, ¶¶ 15–23 (App. 2000).

Investments does not contend that IMH withheld facts from the court or the Receiver about their intention to bundle the parcels to sell in an attempt to maximize proceeds from that sale. The court was aware the purpose of the subsequent transaction was to increase the funds available to the Receiver who was attempting to satisfy the claims of the Judgement Creditors without the assets necessary to do so. Simply put, Investments did not plead sufficient facts to substantiate a claim for extrinsic fraud.

¶20        The receivership court was fully aware that the Receiver was acting in the interest of IMH as a judgment creditor, and in fact directed it to do just that in the Receivership Order. Moreover, the receivership court directed the Receiver to complete the Seagoville PSA, which Maniatis had negotiated before the Receiver was appointed.

¶21        Investments also argues that even if the Receiver may be immune from a claim for breach of fiduciary duty owed to Seagoville and its members, "IMH should be held vicariously liable for the alleged wrongful acts and omissions of the [R]eceiver." But the receivership court's approval of the transactions by the Receiver bar Investments' current claims, independent of any application of receiver immunity. Because Investments did not allege facts sufficient to show fraud on the receivership court in connection with its entry of the Receivership Order or its approval of the Seagoville transaction, Investments' attack on those transactions based on allegations of vicarious liability also fails.

### E.        Vacated Judgment from the Court of Appeals

¶22        Investments next argues that the entirety of the receivership court's rulings are void because this court partially vacated the Judgment that was the basis for appointing MCA as a receiver. *See IMH Special Asset NT 168, LLC v. Aperion Communities, LLLP ("Aperion")*, No. 1 CA-CV 13-0131, 2016 WL 7439001 (Ariz. Ct. App. Dec. 27, 2016) (mem. decision).

¶23        In *Aperion*, this court held that, although the Judgment Debtors' creditors were entitled to summary judgment with respect to the Judgment Debtors' defaults, questions of fact remained about the precise balance owed. *Id.* at *4, *6, ¶¶ 20, 30. In doing so, this court vacated the Judgment and remanded, directing the superior court to determine the amount owed. *Id.* at *6, ¶¶ 30-33. The court noted, however, that "even if the [creditors] do not prove their claimed deficiency balances upon remand, substantial deficiency balances will still exist even under the [Judgment Creditors'] version of the facts." *Id.* at *6, ¶ 33. The creditors filed a motion for reconsideration with this court, and we ordered that any judgment

entered on remand be entered *nunc pro tunc* to the date of the original Judgment.

**¶24** Because the creditors were still entitled to a "substantial deficiency balance," this court's prior ruling did not render the appointment of the Receiver and its subsequent actions void.

### F. Investments' Motion for Leave to Amend

**¶25** Investments also argues the superior court erred by denying its motion for leave to amend the complaint. We review for an abuse of discretion the denial of a motion for leave to amend. *Timmons v. Ross Dress For Less, Inc.*, 234 Ariz. 569, 572, ¶ 17 (App. 2014) (explaining a court does not abuse its discretion in denying a motion for leave to amend if amendment would be futile); *ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 292, ¶ 26 (App. 2010).

**¶26** Here, the court found there is no legal theory on which Investments could prevail, given the absolute immunity of the Receiver. We find no abuse of discretion in this finding. The record shows the Receiver and IMH acted with express authorization of the receivership court. Investments' complaint failed to allege facts to support extrinsic fraud, and on appeal, it still fails to identify any additional facts it might have alleged to support its claims.[4]

## II. Superior Court's Denial of IMH's Request for Rule 11 Sanctions Against Investments

**¶27** IMH asks us to "conclude that [Investments'] Complaint lacked any good faith basis in either fact or law" and reverse the superior court's Rule 11 order declining to sanction Investments, Robert Semple (Investments' principal), R. Stewart Halstead, and R. Stewart Halstead P.C. (Investments' counsel). We review the superior court's denial of Rule 11 sanctions for an abuse of discretion. *See Roberts v. City of Phoenix*, 225 Ariz. 112, 123, ¶ 45 (App. 2010). We will affirm the court's ruling unless it is "clearly untenable, legally incorrect, or amount[s] to a denial of justice." *State ex rel. Thomas v. Newell*, 221 Ariz. 112, 114, ¶ 6 (App. 2009) (internal quotation omitted).

---

[4] Given our resolution of Investments' arguments on appeal, we need not determine whether its collateral attack on the receivership court's orders is precluded under the doctrine of claim preclusion.

**¶28** "[A]n attorney violates Rule 11 by filing a document that he or she knows or should know asserts a position that 'is insubstantial, frivolous, groundless or otherwise unjustified.'" *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 410, ¶ 113 (App. 2012) (internal quotation omitted). "The good faith component of Rule 11 is not based on whether an attorney subjectively pursues claims in good faith, but instead is judged on an objective standard of what a professional, competent attorney would do in similar circumstances . . . ." *Standage v. Jaburg & Wilk, P.C.*, 177 Ariz. 221, 230 (App. 1993). A violation of this rule permits the court to impose an appropriate sanction, which may include expenses and attorney fees caused by the filing of the pleading. Rule 11(c)(1).

**¶29** In its request for Rule 11 sanctions, IMH argued that Investments' complaint lacked any good faith basis and was barred by the receivership court's orders, and that Semple acted in bad faith in bringing the complaint. The superior court denied IMH's motion, declining to sanction Investments, Semple, or Halstead, reasoning that "the record does not support a conclusion that it was objectively unreasonable for [Investments'] lawyer to pursue IMH." The court explained that, although Halstead's theory was creative and later turned out to be unsupported by facts, based on the record at the time the complaint was filed, Halstead did not act in an objectively unreasonable manner. We do not find an abuse of discretion in the superior court's ruling declining to impose sanctions.

## III. Attorney Fees

**¶30** Investments argues the superior court erred in awarding attorney fees to IMH for three reasons. First, Investments argues the court abused its discretion when it found five of their claims "derive from contract." Second, Investments argues the court should not have awarded fees that IMH incurred in connection with its unsuccessful Rule 11 motion for sanctions. Finally, Investments argues the award of fees is unreasonable because IMH did not provide the terms of its fee agreement.

**¶31** We review the superior court's award of attorney fees and costs for an abuse of discretion. *Charles I. Friedman, P.C. v. Microsoft Corp.*, 213 Ariz. 344, 350, ¶ 17 (App. 2006). We will affirm the court's award of attorney fees and costs if it has "any reasonable basis." *State Farm Mut. Auto Ins. Co. v. Arrington*, 192 Ariz. 255, 261, ¶ 27 (App. 1998). Whether the basis for awarding fees is proper is an issue of law we review de novo. *Barrow v. Ariz. Bd. of Regents*, 158 Ariz. 71, 80 (App. 1988).

¶32            The superior court did not err in awarding attorney fees pursuant to A.R.S. § 12-341.01. Section 12-341.01 provides for recovery of fees to the successful party in any contested action arising out of a contract. The phrase "arising out of a contract" in § 12-341.01 must be read broadly, and "an action is considered to have arisen out of contract" if the claim would not exist absent the contract. *ML Servicing Co. v. Coles*, 235 Ariz. 562, 570, ¶ 30 (App. 2014). The superior court found IMH was entitled to attorney fees under § 12-341.01 for every count in the complaint, except the count for accounting and distribution, explaining the remaining counts were derived from the contract for the sale and purchase of the Seagoville Property. The court further explained that Seagoville's claims were based on the contract, that the contract was "the direct result of fraud, constructive fraud, or negligent misrepresentation, and that it resulted in unjust enrichment." We agree. Absent the contract IMH entered into for the purchase of the Seagoville Property, after the Seagoville PSA was entered into, Investments' claims would not exist.

¶33            The superior court likewise did not err in awarding IMH attorney fees that were incurred in pursuing IMH's unsuccessful Rule 11 motion for sanctions. When "a party has accomplished the result sought in the litigation, fees should be awarded for time spent even on unsuccessful legal theories." *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 189 (App. 1983). The court has discretion to award fees when "a successful claim is intertwined with one for which fees are not awardable." *City of Cottonwood v. James L. Fann Contracting, Inc.*, 179 Ariz. 185, 194 (App. 1994). Here, the court treated the research done in IMH's Rule 11 motion as research done for its case in chief. IMH sought to dismiss Investments' complaint, and it was successful in doing so. Moreover, its arguments for sanctions are directly related to its arguments for why Investments' complaint should be dismissed as a matter of law.

¶34            Finally, the fee award to IMH is not unreasonable. Investments argues that IMH's failure to "provide by affidavit or otherwise its fee agreement with its attorneys" is fatal to its request for attorney fees. We disagree. We have held an affidavit submitted in connection with an application for fees must identify the agreed-upon hourly billing rate between the lawyer and the client. *China Doll*, 137 Ariz. at 188. Here, IMH submitted affidavits of its counsel to support its request for a fee award, which contained the billable rate of IMH's counsel and the amount of time billed. The superior court reasoned "[Investments] has offered no . . . reason" to disbelieve IMH's counsel's sworn *China Doll* affidavit, and in the absence of such a reason, courts generally accept sworn affidavits as true.

We agree and presume the hourly billing rate in the affidavit is the amount agreed upon by IMH and its counsel.

¶35 Both parties request attorney fees on appeal. Because IMH is largely the prevailing party, *see China Doll*, 138 Ariz. at 189, and a majority of the claims arose out of contract, we grant its request for attorney fees on appeal under A.R.S. § 12-341.01, and also award costs to IMH upon compliance with ARCAP 21. *See* A.R.S. § 12-341.

## CONCLUSION

¶36 For the foregoing reasons, we affirm the judgment of the superior court dismissing Investments' complaint. We also affirm the court's denial of sanctions.



AMY M. WOOD • Clerk of the Court
FILED:  AA